**MILL REALTY ASSOCIATES et al.**

v.

**Robert CROWE et al.**

**No. 2002–433–M.P.**

Supreme Court of Rhode Island.

Feb. 17, 2004.

Linda Elizabeth Buffardi, Providence, for Plaintiff.

Patrick J. Sullivan, Coventry, for Defendant.

Present: WILLIAMS, C.J., FLANDERS, GOLDBERG, FLAHERTY, and SUTTELL, JJ.

## OPINION

GOLDBERG, Justice.

The Supreme Court granted a petition for writ of certiorari filed by the petitioner, Mill Realty Associates (Mill Realty or petitioner), seeking review of a judgment of the Superior Court that affirmed the decision of the respondents, members of the Zoning Board of Review for the Town of Coventry (Coventry or respondents). This is Mill Realty's second appearance before this Court, having previously sought relief from the requirement that it construct a paved road to provide access to a parcel of land on which it intends to construct a single-family dwelling.

In *Mill Realty Associates v. Zoning Board of Review of Coventry*, 721 A.2d 887

(R.I.1998) (*Mill Realty I*), this Court reviewed, on certiorari, the decision denying Mill Realty's request for relief from the town's subdivision regulation requiring it to construct a road to subdivision standards to obtain a building permit. Specifically, pursuant to G.L. 1956 chapter 23.1 of title 45, entitled "Mapped Streets," Mill Realty sought relief by way of an exception from the requirement that it construct a road to subdivision standards to provide access to its land. Instead, petitioner proposed to construct a single-family dwelling on a platted but unimproved, so-called "paper" street by extending a "private driveway" some 1,600 feet in length and 15 feet in width on the unimproved street. The zoning board, pursuant to § 45–23.1–5, denied the relief and Mill Realty sought certiorari, alleging that the mandate that it construct a road in accordance with the town's construction standards was arbitrary, confiscatory and unlawful. Mill Realty argued that the denial of its requested relief amounted to a confiscatory taking of the lot by the town. The petitioner is now before us seeking to avoid the requirement that it connect this parcel to the public water system.

The parcel in question "appears on a map of house lots entitled Washington Villa Plat platted in 1893 and later recorded in the land records for the town of Coventry in 1896." *Mill Realty I*, 721 A.2d at 890–91. As we noted in *Mill Realty I*, the petitioner purchased, at tax sale, a parcel of land "then depicted on the Coventry tax assessor's plat No. 42, as lot No. 41 and shown as containing 25,000 square feet." *Id.* at 889. This parcel originally consisted of five contiguous lots on the Washington Villa Plat and is located in an area zoned

as R–20 Residential that provides for single-family dwellings with a minimum lot size of 20,000 square feet if the lot is serviced by a public water supply. If the lot is not serviced by a public water supply, the required minimum lot size for a single-family dwelling is 43,560 square feet. The availability of public water and Mill Realty's contention that the lot size provisions of the zoning ordinance does not apply to Lot 41 are the seminal issues in this case.

In *Mill Realty I*, this Court held that in order to build and sell a single-family dwelling, petitioner was required to construct a road to serve the dwelling; however we relieved Mill Realty of the burden of constructing a paved road that met subdivision standards. *Mill Realty I*, 721 A.2d at 892. Instead, we directed that, in order to obtain a building permit, petitioner must construct a gravel road, the minimum established standard grade road permitted by the town's subdivision regulation.[1] *Id.* In so doing, we noted the strong "public interest in and necessity for proper street construction and future development in the plat as well as insuring adequate access into the plat by other plat lot owners[.]" *Id.* We issued that decision in 1998 and "for the expeditious interest of all parties," we remanded the case directly to the zoning board with directions to grant Mill Realty's application for an exception based on its construction of a gravel roadway as defined in the ordinance. *Id.* However, this Court's concern about the lot's area deficiency is readily apparent in the decision. We specifically held:

> rocks, stumps and loam to a depth of twelve (12) inches and replaced with ten (10) inches of bank run gravel and two (2) inches of processed gravel."

1. According to Section 15–51(b)(1) of the Coventry Code of Ordinances's subdivision regulations, the minimum established standard grade road consists of a "twenty-four-foot-wide driving area that shall be stripped of all

"Upon remand, the zoning board shall not, however, be required to direct the building official to issue any building permit authorizing construction of the proposed residential dwelling upon Mill Realty's lot *unless and until the town building official and the zoning board are satisfied that the proposed construction on Mill Realty's lot is in conformity with all applicable building and zoning requirements." Id.* at 893. (Emphasis added.)

Now, almost five years later, petitioner is back before the Court contending that its parcel of land is a single nonconforming lot of record pursuant to Article 8, Section 870–871 of the Coventry Zoning Ordinance and as such, petitioner is entitled to a building permit for a single-family residence without access to a public water supply, notwithstanding that the lot does not meet the minimum lot size requirement of 43,560 square feet. Coventry's building official refused to issue a building permit, having concluded that public water was available to Lot 41 and the lot did not meet the minimum lot size requirement for a single-family dwelling without access to public water. The zoning board affirmed the decision of the building official and specifically declared that a building permit would be issued if access to the public water supply was accomplished.

Mill Realty appealed to the Superior Court, which sustained the decision of the board. The trial justice found that petitioner's parcel was a conforming lot because it met the 20,000–square–foot requirement for lots with access to a public water supply. She further declared that Article 6 of the Coventry Zoning Ordi-

nance was permissive because it provided that a "lot or parcel of land having a lot width or area which is less than required by Article 6 *may* be considered buildable for [s]ingle [family] residential purposes * * *." (Emphasis added.) According to the trial justice, the zoning board is vested with discretion to determine whether an undersized lot is buildable as a single-family dwelling. Noting that Article 2, Section 200–201(C) of the Coventry Zoning Ordinance defines the term "may" as permissive rather than mandatory, the trial court found that this express language provided the zoning board with discretion to grant or deny the petition.

The trial justice also addressed petitioner's contention that Coventry has selectively enforced the lot size requirement relative to lots that were not serviced by public water. Mill Realty alleged that the board was guilty of arbitrary and capricious selective enforcement of its zoning provision. Although acknowledging petitioner's contentions, the trial justice rejected this argument, concluding that a selective enforcement argument is more commonly raised in cases alleging a denial of due process or equal protection of the laws and did not apply to the facts in this case. The trial justice found that Coventry did not selectively enforce its zoning ordinance because each zoning application is reviewed individually in accordance with its broad grant of statutory authority.[2]

The petitioner sought review in this Court by writ of certiorari and has assigned as error the trial justice's construction of portions of the zoning ordinance. The petitioner also alleges that the decision of the zoning board was arbitrary and

---

**2.** The petitioner also argued that Coventry impermissibly intruded upon the authority of the state Department of Environmental Management in passing upon the health and safety concerns inherent in the use of private wells.

The trial justice rejected this argument. Because of our decision with respect to the availability of water to Lot 41, we need not address this issue.

capricious, again arguing that respondent is guilty of selective enforcement of its zoning ordinance in light of its "long record of granting building permits for single family houses serviced by wells on lots of less than one acre in size." The petitioner faults the trial justice for confining her decision to the issue of selective enforcement and not addressing its larger concern that Coventry's decision was arbitrary and capricious.

In passing upon a decision of a zoning board of review, the Superior Court may not substitute its judgment for the zoning board of review concerning the weight of the evidence on questions of fact. G.L.1956 § 45–24–69(d). It is the function of the Superior Court to "examine the entire record to determine whether 'substantial' evidence exists to support the board's findings." *DeStefano v. Zoning Board of Review of Warwick*, 122 R.I. 241, 245, 405 A.2d 1167, 1170 (1979) (citing *Apostolou v. Genovesi*, 120 R.I. 501, 508, 388 A.2d 821, 824–25 (1978)). Substantial evidence has been defined "as more than a scintilla but less than a preponderance." *Apostolou*, 120 R.I. at 508, 388 A.2d at 824–25. The trial justice may not "substitute [his or her] judgment for that of the zoning board if [he or she] can conscientiously find that the board's decision was supported by substantial evidence in the whole record." *Id.* at 509, 388 A.2d at 825. On certiorari, this Court must "scrutinize the record as a whole to determine 'whether legally competent evidence exists to support the findings of the court below.'" *Caswell v. George Sherman Sand & Gravel Co.*, 424 A.2d 646, 648 (R.I.1981) (quoting *Toohey v. Kilday*, 415 A.2d 732, 735 (R.I.1980)). After a careful review of the record in the case before us, we are satisfied that petitioner has failed to present sufficient evidence to substantiate its allegations and that the trial justice correctly found that substantial evidence supports respondent's decision.

The record discloses that Mill Realty has not yet constructed the gravel road as required in *Mill Realty I*, but has acknowledged that constructing a gravel road in accordance with this Court's decision is a condition precedent to the issuance of a building permit. Although conceding that it must construct a road that is twenty-four feet wide and cleared, excavated and filled to a depth of twelve inches (*see* note 1, *supra*), Mill Realty contends that it is exempt from installing a waterline in the same road at the same time. Despite our holding in *Mill Realty I* that the lot is "18,560 square feet short of meeting the minimum lot size required to permit construction of a single-family dwelling" without public water, Mill Realty contends that its lot is "grandfathered" and is not required to supply public water to the parcel, nor is it required to seek relief from the lot size requirements of the zoning ordinance.

According to petitioner, because the five lots that comprise the parcel in question were recorded in 1896, the land is exempt from the minimum lot size requirements of the zoning ordinance. Specifically, Mill Realty contends that Article 8, Section 870–871, controls the result in this case. The ordinance provides as follows:

"870—Single Nonconforming Lots of Record:

871 — A lot or parcel of land having a lot width or area which is less than required by Article 6 may be considered buildable for single family residential purposes regardless of the lot width or area, provided such lot or parcel of land was duly recorded prior to the effective date of this Ordinance, and further provided that at the time of the recording said lot or parcel of land so created conformed in all respects to the minimum requirements

of the Zoning Ordinance in effect at the time of such recording, and did not adjoin other land of the same owner on the effective date of this Ordinance or at any time after such lot or parcel of land was rendered substandard by the provisions of any prior Zoning Ordinance. Any lot meeting the requirements of a single non-conforming lot of record for single family purposes shall be governed by the requirements of Section 890 for determination of setbacks for principle structures."

It is petitioner's contention that its parcel meets the requirements of Section 870–871 and is therefore buildable for single-family residential purposes "regardless of the lot width or area" and need not satisfy the one-acre requirement for lots not serviced by public water. However, Mill Realty ignores the fact that its lot meets the requirements of an R–20 zone for a lot with access to public water as found by the zoning board and affirmed by the hearing justice.

■ The Superior Court hearing justice specifically found, *inter alia*, that Lot 41 is not a nonconforming lot of record because it meets the 20,000–square–foot size required for a single-family dwelling in an R–20 zone.[3] As such, the hearing justice declared that Mill Realty "must obtain access to public water or obtain a dimensional variance to construct a private well on an undersized lot." Significantly, with the exception of petitioner's bald assertion that this "property has no feasible access to Coventry['s] public water [supply]," there

is no evidence in the record that the construction of a water line could not reasonably be accomplished. Indeed, there is not a scintilla of evidence that supports this contention as contrasted with the unequivocal and uncontradicted testimony of the zoning enforcement officer that this parcel was located in an area with access to public water and that it was feasible for petitioner to connect to the public water supply. The record discloses that the closest public water line is 1,600 feet from Lot 41, at Club House Road, the nearest improved and accessible road and the road that will intersect with Columbus Avenue, the road that petitioner must construct as a condition precedent to a building permit.

The petitioner failed to present any expert testimony or engineering studies concerning the projected costs associated with installing a water line or any potential difficulty anticipated by its construction. Nor was any evidence introduced comparing the cost of a water line to the expense of installing a well. Because the undisputed evidence is that a connection to the water supply can be accomplished and that Columbus Avenue must be constructed from the point where the water line already is in place, the decision of the board that a building permit would be issued if Mill Realty connected to the water line was supported by substantial evidence. Both the building official and the zoning board have concluded that public water is available to this lot, albeit at a greater expense than if a water line were already in place in front of the parcel. Further, Coventry has argued that all other lots in

---

3. As noted, the trial justice also concluded that Article 6, Section 870–871 of the Coventry Zoning Ordinances is permissive because it provides a nonconforming lot of record and may be considered buildable if certain conditions precedent are met. In light of our holding that Lot 41 is a conforming lot of record provided there is access to public water, we need not reach this issue. Nor are we required to decide whether, because Lot 41 consisted of *five* contiguous lots of record on the date the Coventry Zoning Ordinance became effective, it was not a single lot and does not fall within the provisions of Section 870–871.

the Washington Villa Plat subdivision are subject to the requirement of public water as part of the town's "orderly planning for the future residents of this subdivision." We agree with this conclusion.

■ In reaching this determination, we are mindful that this home will be marketed and will be inhabited by future residents of the Town of Coventry. Maintaining a public water supply and requiring that builders construct extensions to the town's public water system falls squarely within Coventry's police power. *See Munroe v. Town of East Greenwich*, 733 A.2d 703, 710 (R.I.1999) ("[z]oning, land development and subdivision regulations constitute a valid exercise of [a municipality's] police power"). We also note that both the hearing justice and Coventry agree that petitioner is not without a remedy. Because the ordinance permits construction of a single-family dwelling on a lot without access to public water, Mill Realty may seek dimensional relief from the town's minimum lot size requirements. Should Mill Realty elect to seek dimensional relief, it is incumbent upon petitioner to demonstrate that public water is unavailable or is in fact prohibited by the cost of extending the water line from Club House Road.

### Selective Enforcement

The petitioner has also raised the issue of selective enforcement of the town's zoning ordinance. Mill Realty contends that the decision of the Zoning Board of Review was arbitrary and capricious because previously the town has issued building permits for lots that, petitioner alleges, were similarly situated. According to Mill Realty, Coventry has a "long record of granting building permits for single family houses serviced by wells on lots of less than one acre in size." According to Mill Realty its evidence included building permit applications for homes in Coventry that, it contends, support this conclusion. However, the zoning enforcement officer disputed petitioner's assertion and testified that the evidence petitioner submitted related to existing dwellings for which a building permit was issued for reconstruction or requests for permits in areas where public water is not available and, according to the zoning official, will not be made available. The zoning enforcement officer testified that with respect to some of the applications introduced by petitioner, "the [t]own has taken the position that water is not available and for the most part will not be available" to those areas. However, with respect to the Mill Realty property, she testified that water is available from the water line on Club House Road.

The zoning enforcement officer recognized that construction of a water line to petitioner's lot may be burdensome; however, she also noted that "the entire area [was] serviced by public water" and everyone who built in the area was required to provide access to public water notwithstanding this difficulty. Finally, the zoning enforcement officer testified that it would be "inappropriate to issue a building permit for one house lot that is being serviced by a well in an area that is entirely being serviced by public water."

■ With respect to the issue of selective enforcement, petitioner has not raised any issues of constitutional dimension. Mill Realty has not asserted a violation of its right to substantive due process, *see Brunelle v. Town of South Kingstown*, 700 A.2d 1075, 1084 (R.I.1997) (proof of a violation of substantive due process requires proof "that the government's action was 'clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare'"), nor has it asserted an equal protection violation, *see Sweetman v. Town of Cumber-*

*land,* 117 R.I. 134–151, 364 A.2d 1277, 1288 (1976) (municipal action that affects a "fundamental right" or sets up a suspect classification "will be invalidated on equal protection grounds only if the classification bears no reasonable relationship to the public health, safety, or welfare"). Rather, as it argued to the trial justice, petitioner contends that Coventry's decision was arbitrary and capricious because there was no rational basis in the record for respondent's disparate treatment of its application from other building permit applications it introduced at the hearing. We deem this argument without merit. The petitioner failed to establish that it was the victim of disparate or discriminatory treatment. The building official testified that Lot 41 was not similarly situated to the building permit applications introduced by petitioner. According to the witness, the applications submitted by petitioner were not similar because they related to existing structures or areas not serviced by town water. The zoning enforcement officer testified that public water was available to Lot 41. In holding that a building permit would be issued "if public water were brought to the subject property[,]" respondent reached the same conclusion. There is substantial evidence in the record to support this decision and no evidence that supports petitioner's contentions.[4]

Additionally, the petitioner contends that its argument on this issue was broader than the question of selective enforcement and faults the trial justice for failing to consider whether the decision was arbitrary and capricious. We reject this contention. The argument advanced by the petitioner was that the town has selectively enforced "an inapplicable zoning ordinance" which is "an arbitrary and capricious exercise of authority and abuse of discretion as a matter of law." The petitioner argued that Coventry has selectively enforced the lot size requirement and that, in the absence of an ordinance that defines when water is available and unavailable, its decision was arbitrary and capricious. It makes the same argument to this Court. The petitioner also contends that the implicit finding that the availability of public water, which was the linchpin of the respondent's decision, is "equally as arbitrary and capricious as was the zoning official's." This argument ignores the evidentiary failures in this case: that the petitioner failed to demonstrate it was the victim of disparate treatment and thus, failed to meet its burden of proof. Clearly, reliable and probative evidence was provided by the zoning enforcement officer that water is available to Lot 41 and there was no evidence to the contrary. As it was entitled to do, the board elected to rely on the testimony of the zoning enforcement officer. We discern no error in that determination.

### Conclusion

Accordingly, for the reasons set forth herein we affirm the judgment of the Superior Court.

FLANDERS, J., dissenting.

I believe the Superior Court misapplied the law when it interpreted the towns ordinance as vesting the building official with unfettered discretion to grant or deny a building permit in these circumstances. And because the zoning board also acted arbitrarily and capriciously in affirming the building officials denial of the property

---

4. Indeed, with respect to the building permit applications submitted by petitioner, when asked whether public water was available to a particular area of town, counsel responded, "[t]here is always city water available if you want to run a pipe from the Scituate Reservoir."

owners building-permit application, I would quash the Superior Court judgment upholding the boards decision and remand this case with directions to that court to enter a new judgment requiring the building official to issue the permit.

This case is here on certiorari to review a Superior Court judgment affirming a decision by the Zoning Board of Review (board) for the Town of Coventry (town). The town's building official denied an application for a building permit filed by the petitioner, property owner Mill Realty Associates (Mill Realty). On appeal, the board upheld the denial and the Superior Court affirmed the board's decision.

As the owner of a parcel of undeveloped land (the property) comprising more than half of an acre in the town and qualifying as a substandard lot of record, Mill Realty sought permission from the town to build a single-family home on it. In denying its application for a building permit, the building official ruled that Mill Realty either must connect the property to the nearest public water supply line (located approximately 1,600 feet or one-third of a mile from the property), or else obtain a dimensional variance from the board to build a single-family house on the property. Both the board and the Superior Court affirmed this permit denial. In asking us to reverse, Mill Realty argues that because the property was duly platted and recorded in the town's land-evidence records before the effective date of the town's enactment of a zoning ordinance (ordinance) and because its property otherwise constituted a buildable parcel, the town should have treated it as such, issued the permit, and not required Mill Realty to obtain a dimensional variance or a connection to the public water supply.

In this case, I would hold that competent evidence does not support the Superior Court judgment because the trial justice misapplied the law in interpreting Article 8, Section 870–871 of the Coventry Zoning Ordinance, the board acted arbitrarily and capriciously in denying Mill Realty's application for a building permit, and Mill Realty did not possess an adequate remedy at law. For the reasons indicated herein, I would reverse, quash that judgment, and remand the case with directions to enter a new judgment requiring the building official to issue the permit.

I

In my opinion, the trial justice misconstrued Article 8, Section 870–871 of the ordinance by interpreting it as granting the building official virtually unfettered discretion to issue or deny a building permit for a substandard parcel of land such as this property that "was duly recorded prior to the effective date of this Ordinance." Section 870–871.

Section 870–871 provides in pertinent part:

"A lot or parcel of land having a lot width or area which is less than required by Article 6 *may* be considered buildable for single family residential purposes regardless of the lot width or area, provided such lot or parcel of land was duly recorded prior to the effective date of this Ordinance, and further provided that at the time of the recording said lot or parcel of land so created conformed in all respects to the minimum requirements of the Zoning Ordinance in effect at the time of such recording, and did not adjoin other land of the same owner on the effective date of this Ordinance or at any time after such lot or parcel of land was rendered substandard by the provisions of any prior Zoning Ordinance." (Emphasis added.)

The trial justice interpreted Section 870–871's use of the word "may" as vesting the

building official with virtually unfettered discretion to refuse to consider a substandard lot of record as buildable for the construction of a single-family dwelling. In reaching this conclusion, the Superior Court cited Article 2, Section 200–201(C) of the Coventry Zoning Ordinance, which defines "may" as permissive rather than "mandatory." *See Carlson v. McLyman,* 77 R.I. 177, 182, 74 A.2d 853, 855 (1950) (conceding that the ordinary meaning of the word may is permissive and not compulsory).

I agree with the trial justice insofar as she reasoned that Section 870–871's use of the "may" usually contemplates some degree of discretion rather than requiring that the town treat the nonconforming lot or parcel of record as buildable. I disagree, however, that the use of the word "may" in Section 870–871 vests the zoning official with unfettered discretion to grant or deny a building permit to the owners of such lots or parcels of property that are substandard in area or width. In my view, Section 870–871's use of the term "may" grants the building official only limited discretion to deny a building permit when the lot fails to comply with one of the provisos in Section 870–871 or when some other legal nonconformity exists—besides an undersized lot area or width—to warrant the denial of a building permit. Thus, the zoning official "may" deny a building permit under Section 870–871 to an owner of a lot that is nonconforming by area if that lot was not duly recorded before the effective date of the ordinance, or if the proposed development would violate some other provision of the ordinance—for example, if the proposed use was nonconforming or the proposed access road to the premises would not comply with the applicable sections of the ordinance. In my opinion, however, the building official cannot deny a building permit under Section 870–871 to a substandard parcel of record if the proposed construction on that parcel otherwise complies with the provisions of Section 870–871 and with the other applicable zoning requirements.

This position comports with the well-established rule that, generally speaking, a building official has no discretion when deciding whether to issue or deny a building permit; instead, his or her obligation is ministerial in nature because the proposed construction project either complies with the ordinance or it does not. *Town of Johnston v. Pezza,* 723 A.2d 278, 284 (R.I. 1999) (citing *Johnson & Wales College v. DiPrete,* 448 A.2d 1271, 1276–77 (R.I.1982); *Wood v. Lussier,* 416 A.2d 690 (R.I.1980)). Interpreting the word "may" in the ordinance in such a manner as to invest the building official with unfettered discretion to treat substandard lots of record as buildable opens the door to arbitrary and retaliatory permit denials.[5]

Here, but for the exemption in Section 870–871 for substandard lots of record, Mill Realty's proposed construction of a single-family residence would violate the ordinance's area requirements for a lot not served by public water. Section 870–871, however, states that the building official may nevertheless consider the lot as "buildable"—that is, issue a building permit to Mill Realty—without requiring it to obtain a dimensional variance or a connection to the public water supply because the lots comprising this substandard parcel were duly recorded in 1896, predating the

---

5. In this case, the permit denial occurred only after this Court had granted Mill Realty's previous petition for certiorari and ordered the town to allow it to build the least expensive type of access road to its property, an option that the town and its officials had refused to extend to Mill Realty until this Court ordered it to do so. *See Mill Realty Associates v. Zoning Board of Review of Coventry,* 721 A.2d 887, 892 (R.I.1998) (*Mill Realty I*).

enactment of the ordinance. No evidence showed that Mill Realty's proposed development contravened any other provisions in Section 870–871 or any other provisions of the ordinance. But instead of considering the property as "buildable," the zoning official and the board arbitrarily required it to obtain a dimensional variance or to connect to the public water supply—totally disregarding its favored status as a substandard parcel of record.[6] Accordingly, I conclude that the Superior Court misapplied the law when it affirmed the town's denial of Mill Realty's application for a building permit.

Here, the trial justice's interpretation of Section 870–871 as vesting the board and the building official with virtually unlimited discretion to grant or deny such applications, tends to defeat the purpose of protecting substandard lots of record from later-enacted zoning requirements because it denies to owners of lots of record that are nonconforming by area the "buildable" status that the ordinance intended for them to enjoy. "When interpreting an ordinance this Court applies the same rules of construction that are applied for statutes." *Town of North Kingstown v. Albert*, 767 A.2d 659, 662 (R.I.2001) (citing *Mongony v. Bevilacqua*, 432 A.2d 661, 663 (R.I.1981)). By construing the word "may" as vesting the board with only limited discretion, I interpret the ordinance in a manner consistent with its evident underlying purpose of protecting substandard parcels of record that are nonconforming by dimension from the later-enacted area requirements of the existing zoning ordinance. *See id.* (citing *Brennan v. Kirby*, 529 A.2d 633, 637 (R.I.1987)). Moreover, when we are faced with a choice between one interpretation that furthers the purpose of an ordinance and another that defeats it, we should adopt the former. *See Town of Tiverton v. Fraternal Order of Police, Lodge # 23*, 118 R.I. 160, 165, 372 A.2d 1273, 1276 (1977) (citing *State v. Sprague*, 113 R.I. 351, 355, 322 A.2d 36, 38 (1974)). By interpreting the word "may" as giving the building official only limited discretion to deny a building permit under Section 870–871—for example, when the proposed construction would violate some law or regulation other than the applicable area or width regulation— we would further G.L.1956 § 45–24–38's and § 45–24–39(a)'s purpose of protecting owners of substandard lots of record from later-enacted area and width requirements without unduly confining the building official's ability to deny applications for noncompliance with other sections of the ordinance.

The Superior Court also misapplied Section 870–871 by ruling that Mill Realty's lot did not qualify as a nonconforming lot under § 45–24–31(49)(ii).[7] The trial jus-

---

6. For this reason, I disagree with the suggestion that Mill Realty possessed an adequate remedy by simply applying for and obtaining a dimensional variance. Mill Realty's position was that, as a nonconforming lot of record, it did not have to obtain a dimensional variance to obtain a permit because it was a buildable lot of record. A remedy is not adequate when the petitioning party contends that it is entitled as a matter of law to obtain a permit to build without first seeking or obtaining such a variance.

7. General Laws 1956 § 45–24–31(49) provides in pertinent part:

*Nonconformance.* A building, structure, or parcel of land, or use thereof, lawfully existing at the time of the adoption or amendment of a zoning ordinance and not in conformity with the provisions of that ordinance or amendment. Nonconformance is of only two (2) types:

\* \* \*

(ii) Nonconforming by dimension: a building, structure, or parcel of land not in compliance with the dimensional regulations of the zoning ordinance. Dimensional regulations include all regulations of the zoning ordinance, other than those pertain-

tice ruled that petitioner's parcel did not qualify for nonconformance by dimension because the lot was in excess of the 20,000 square feet required by the R–20 zone. But lots in an R–20 zone that are in excess of 20,000 square feet satisfy the dimensional requirements only if they also are connected to the public water supply. Therefore, the trial justice reasoned, Mill Realty's lot was not a nonconforming lot because the building official believed that it was possible—no matter how expensive and impractical it might prove to do so—for it to connect the lot to the public water line located one-third of a mile, or 1,600 feet, from the property line. Although the trial justice correctly found that the R–20 zone required only 20,000 square feet to obtain a permit to build a residence, this was true only for lots that were tied into a public water line. This property, however, was not connected to the public water supply. The fact that it may have been technically possible (albeit practically imprudent) for the owner to connect the lot to the public water supply was, in my judgment, irrelevant. Rather, it was nonconforming by area because Article 6, Table 6–7 of the Coventry Zoning Ordinance provided that lots with no public water— that is, those lots utilizing private wells and an ISDS instead of public water— must contain at least 43,650 square feet in area. Indeed, the whole reason for this litigation is Mill Realty's desire to construct a private well and ISDS on this property, rather than incur the greater expense and inconvenience of connecting to the public-water line some 1,600 feet away. Thus, when considered in this context, Mill Realty's property was indeed nonconforming by area because, regard-

less of whether the building official believed it was possible for the lot to connect to the public water supply, it was not so connected when Mill Realty applied for the permit. Consequently, given its status as a nonconforming lot of record, the building official should have considered it to be buildable under the ordinance without requiring Mill Realty to obtain a variance or to connect the property to the public water supply.

Finally, the Superior Court's interpretation of Section 870–871 violated the zoning enabling act by delegating too much unguided discretionary authority to the board and to the town's building official. Jurisdiction in zoning matters is limited in scope by the act and the "jurisdiction thereby conferred can neither be expanded nor diminished by the terms of an ordinance." *Lincourt v. Zoning Board of Review of Warwick*, 98 R.I. 305, 309, 201 A.2d 482, 485 (1964) (describing as a "nullity" an ordinance providing for a variance that authorizes something more or something less than the terms of the zoning enabling act); *Reynolds v. Zoning Board of Review of Lincoln*, 96 R.I. 340, 343, 191 A.2d 350, 353 (1963) ("[J]urisdiction of zoning boards of review is that prescribed in the enabling act and that the jurisdiction therein vested in such boards can neither be enlarged nor restricted by enactments contained in a zoning ordinance."). Here, the Superior Court's interpretation of Section 870–871 expanded the jurisdiction of the board and the building official by granting them broad, uncanalized discretion to grant or deny building permits to nonconforming parcels of record in the town, in the absence of any guidelines, limitations, or

ing to the permitted uses. A building or structure containing more dwelling units than are permitted by the use regulations of a zoning ordinance is nonconforming by use; a building or structure containing a

permitted number of dwelling units by the use regulations of the zoning ordinance, but not meeting the lot area per dwelling unit regulations, is nonconforming by dimension.

safeguards for doing so. *See Bailey v. Zoning Board of Review of Warwick*, 94 R.I. 168, 171, 179 A.2d 316, 317 (1962) (invalidating zoning board action pursuant to provision vesting it with "carte blanche authority to approve or disapprove in its uncontrolled discretion").

By interpreting Section 870–871 as giving the building official and board only limited authority, we would comply with the enabling act without expanding or diminishing their respective jurisdictions. *See Carlson v. Town of Smithfield*, 723 A.2d 1129, 1131 (R.I.1999) (per curiam) (" 'When the validity of an ordinance is at issue, the court must, if possible interpret the ordinance as valid.' "). Moreover, the building officials future decisions under Section 870–871 should be confined by the principle that the building official may deny an application to build a residence on a nonconforming lot of record only if granting it would violate another, independent provision of the ordinance; but not simply because, in his or her unfettered discretion, the official believed the owner can either connect the property to the public water supply or obtain a dimensional variance before the permit would issue.

## II

In addition to misconstruing Section 870–871 of the ordinance, the Superior Court also erred in affirming the board's decision because competent evidence indicated that the board's decision was arbitrary and capricious. Before applying for a building permit, Mill Realty sought and received approval for a private well and an ISDS from the DEM. Despite DEM's ap-

proval—thereby indicating that Mill Realty could safely construct a private well and ISDS on its property—the building official denied Mill Realty's application for a building permit because, in her estimation, its half-acre property could be connected to the public water supply. In addition, Mill Realty introduced competent evidence showing that the board frequently granted building permits for single-family dwellings serviced by private wells on lots that did not satisfy the dimensional requirements of the ordinance.

1. **The Board Acted Arbitrarily and Capriciously When It Ignored DEM's Well and ISDS Approval and Found that the Property Could Not Accommodate a Private Well and ISDS**

As the Superior Court noted, the DEM is responsible for enforcing "the standards for the quality of air, and water, and the design, construction and operation of all sewage disposal systems." G.L.1956 § 42–17.1–2(m). Furthermore, no individual "shall install, construct, alter, or repair * * * [an ISDS] until he or she has obtained the written approval of the director of the department of environmental management of the plans and specifications for the work." G.L.1956 § 23–27.3–113.6.1. Also, the town has enacted Article 7, Section 7160–7162, of the Coventry Zoning Ordinance which makes DEM approval of an ISDS a prerequisite to obtaining a building permit.

Section 45–24–69(d)(6) [8] of the General Laws directs the Superior Court, on re-

---

8. Section 45–24–69(d) provides:

The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or

may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions, or decisions which are:

(1) In violation of constitutional, statutory, or ordinance provisions;

view of a zoning board decision, to reverse that decision when it was "[a]rbitrary or capricious or characterized by [an] abuse of discretion or [a] clearly unwarranted exercise of discretion." Here, Mill Realty obtained DEM approval before it applied for a building permit. Although this approval did not require the building official to issue a building permit, Mill Realty's ability to obtain DEM approval indicated that its planned private well and ISDS would not create a public safety concern with respect to its use of water on the property. Nevertheless, the building official arbitrarily rejected Mill Realty's application—apparently because she believed that Mill Realty's property could connect to the public water supply and, therefore, Mill Realty should not be allowed to build a house using a private well and ISDS. In affirming, the board, in its decision on February 6, 2001, neglected to set forth any findings of fact or reasons explaining why it would not permit Mill Realty to construct a private well and ISDS in light of DEM's approval of such plans. Instead, it simply reiterated the building official's conclusion that the property did not comply with the area requirements of Article 6, Table 6-7, and it conditioned issuance of a permit on Mill Realty's connecting to the public water supply.

"We have repeatedly said that a municipal board or council must, in its decision, set forth findings of fact and reasons for the action that it takes when acting in a quasi-judicial capacity." *Sambo's of Rhode Island, Inc. v. McCanna*, 431 A.2d 1192, 1193 (R.I.1981). In this case, the board's decision lacked any reasons explaining why it chose to uphold the building official's decision not to issue the permit—despite the property's status as a nonconforming lot of record—after Mill Realty had obtained DEM approval for the ISDS system and well. Accordingly, I would hold that the board acted arbitrarily and capriciously because it premised its permit denial on construction plans explicitly approved by DEM and it gave no reasons why it upheld the building official's denial of the permit. *See MC. & S. Realty, Inc. v. City Council of Cranston*, 86 R.I. 179, 182, 133 A.2d 765, 766 (1957) ("We therefore conclude that the action of the council in denying the application was arbitrary and without any lawful reason to support it.").

2.  **The Board Acted Arbitrarily and Capriciously by Denying a Building Permit to Mill Realty in Contravention of Its Practice of Granting Permits in Similar Situations**

The board also acted arbitrarily and capriciously when it rejected Mill Realty's application despite its practice of granting permits for the construction of single-family dwellings served by private wells on lots that did not conform to the ordinance's area requirements. Competent evidence showed that the board treated Mill Realty differently from other similarly-situated developers for no rational reason after Mill Realty successfully sued the town to avoid having to construct an unreasonably expensive access road to its property. For example, Mill Realty introduced into the record building permits for applications submitted by other developers with respect to lots that did not satisfy the dimen-

(2) In excess of the authority granted to the zoning board of review by statute or ordinance;

   (3) Made upon unlawful procedure;

   (4) Affected by other error of law;

(5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or

(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

sional requirements for using a private well instead of the public water supply. Mill Realty then introduced a memorandum from a town official explaining that the town issues building permits regardless of lot size when public water is unavailable. Ostensibly, then, this memorandum reflects the town's practice, despite the absence of any guidelines or standards stating when the town should deem public water available or unavailable.

By denying Mill Realty's application because it deemed that public water was available to the property, the building official acted arbitrarily and capriciously, as did the board in affirming that denial. *See Tillotson v. City Council of Cranston*, 61 R.I. 293, 295, 200 A. 767, 768 (1938) (labeling as "arbitrary and unreasonable" city council decision not based on any "rule or standard"); *see also MC. & S. Realty, Inc.*, 86 R.I. at 182, 133 A.2d at 766. From all that appears in the record, the building official granted some building permits and denied others in the absence of any rational rule or standards for doing so with respect to substandard lots of record; instead, by their own admission, both the building official and the board appeared to condition their approval of building permits for substandard lots of record on whether they deemed access to public water was available to the property. But because there were no guidelines for the building official or the board to rely on in making this determination, any decisions made on this basis necessarily were arbitrary and capricious. *See Tillotson*, 61 R.I. at 295, 200 A. at 768.

In addition, the board's decision may also amount to a violation of the equal-protection clause of Fourteenth Amendment to the United States Constitution. For example, in 2000, the United States Supreme Court held that a homeowner could proceed on an equal-protection claim when a town unreasonably conditioned the homeowner's act of connecting to the municipal water supply on the homeowner's granting the town a thirty-three-foot easement, even though it required only a fifteen-foot easement from other similarly situated property owners. *Village of Willowbrook v. Olech*, 528 U.S. 562, 565, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000) (per curiam). Here, the town unreasonably conditioned a building permit on Mill Realty's obtaining a variance or connecting the property to the public water supply when it granted building permits to other properties that were similarly situated as this property without first requiring the owners of those properties to obtain a variance or to connect to the public water supply.

### III

Finally, I disagree with the suggestion that Mill Realty possessed an adequate remedy at law because the board, in its denial of Mill Realty's application for a building permit, stated that Mill Realty could seek a dimensional variance. As a general rule, this Court will not grant a common-law writ of certiorari when another remedy exists that adequately safeguards the petitioner from substantial harm or injustice. *See Ratcliffe v. Coastal Resources Management Council*, 584 A.2d 1107, 1109–10 (R.I.1991). Here, I do not believe that Mill Realty's option to apply for a dimensional variance constituted an adequate remedy that thereby precluded this Court from issuing an opinion in favor of Mill Realty on certiorari. I disagree with this conclusion because the so-called adequate remedy—applying for a dimensional variance—decides the very matter that Mill Realty is challenging before this Court. It is Mill Realty's contention that it need not seek or obtain a dimensional variance because Section 870–871 of the ordinance removed its property from the

strictures of Article 6, Table 6–7. In other words, because its property qualified as a substandard lot of record, it did not have to apply for a dimensional variance. Construing Mill Realty's option to apply for a dimensional variance as an adequate remedy would force Mill Realty to effectively concede that its property does not comply with the ordinance's dimensional requirements and that it needs a dimensional variance to obtain a building permit. Such a remedy is hardly adequate because it forces the property owner to concede the very legal requirement that it is contesting.

Moreover, even if one were to assume, *arguendo*, that pursuing a dimensional variance would amount to an adequate remedy, this Court still has the authority to rule in favor of Mill Realty when reviewing this case on certiorari. On occasion, in the interests of justice, we will issue the writ to allow a petitioner to obtain immediate review even though another remedy would be available later. *Wilkinson v. Harrington*, 104 R.I. 224, 227, 243 A.2d 745, 748 (1968). For example, in *Ratcliffe*, 584 A.2d at 1109–10, we issued a writ of certiorari to review a decision by the Coastal Resources Management Council (CRMC) even though another remedy existed. In that case, the CRMC issued a cease-and-desist order to the petitioners who were constructing a residence after obtaining a building permit and an ISDS permit. *Id.* at 1108. While noting the existence of other remedies that were available to the petitioners, we granted the writ to prevent "further delay" and to end the "bureaucratic morass" that had over-taken the petitioners' development plans. *Id.* at 1110.

Here, even if an adequate remedy had existed—and for the reasons stated, I do not believe seeking a dimensional variance constituted an adequate remedy—I still would decide this petition in favor of Mill Realty to put an end to the "bureaucratic morass" that has engulfed Mill Realty's plans to develop this lot. Mill Realty purchased the property in 1994 at a tax sale. Since then, Mill Realty and the board have sparred continually over the development plans. As previously noted, this is the second time the parties have appeared before this Court disputing such plans. Therefore, I would rule on certiorari in favor of Mill Realty to prevent "further delay" and to end the "bureaucratic morass" that has ensnared Mill Realty's development plans. *Ratcliffe*, 584 A.2d at 1110.

### Conclusion

For these reasons, I would quash the judgment of the Superior Court and remand this case to that court with instructions to enter an amended judgment that vacates the boards decision (upholding the building officials denial of the building-permit application) and orders the building official to issue the building permit to Mill Realty.