DECISION
Before this Court is an appeal from a decision of the Town of Lincoln Zoning Board of Review (Board), denying Michael Trenteseau's (Mr. Trenteseau or Applicant) application for a dimensional variance. Mr. Trenteseau seeks reversal of the Board's decision. Jurisdiction is pursuant to G.L. 1956 § 45-24-69.
 I Facts and Travel
The Applicant is the owner of a parcel of real estate located at 500 Great Road, Lincoln, Rhode Island, and identified as Assessor's Plat 22, Lot 11 (the "Property"). The Property contains twenty-three thousand nine hundred fifty-five square feet (23,955 ft[2]), and is located in an RL-9 zoning district. (Applicant's Exhibit A.) Under the Lincoln Zoning Ordinance, an RL-9 zoning district is a residential limited district established to promote high-density single-family and two-family dwellings. Lincoln Zoning Ordinance Art. II, § 260-7. The dimensional requirements in an RL-9 zoning district include a minimum lot area of nine thousand square feet *Page 2 
(9000 ft[2]) for a single-family dwelling, a lot width of seventy-five feet, a front setback of forty feet, and a side setback of fifteen feet. Id. at § 260-22.
The Applicant's existing dwelling maintains a front setback of approximately eighteen and one-half feet (more specifically, 18.49 feet), a side setback of approximately nine and one-half feet (9.55 feet), and a rear setback of approximately three and one-third feet (3.30 feet). (Applicant's Exhibit A.) The Property is currently an existing legal non-conforming lot of record. See Applicant's Exhibit A; G.L. 1956 § 45-24-39. The irregularity in the Property, and its subsequent status as an existing non-conforming lot, resulted from an eminent domain proceeding initiated by the State of Rhode Island. (Tr. at 6.) Prior to this taking, the Property met all setbacks required, but due to the creation of the Lincoln Woods, a strip of land was taken from the rear and side of the Property, thereby causing its current deficiencies. Id.
On July 18, 2007, Mr. Trenteseau filed an initial application with the Town of Lincoln Planning Board (the "Planning Board") seeking to subdivide his property. If the subdivision were permitted, each of the lots would meet the 9000 ft[2] minimum requirement area under the Zoning Ordinance. Lincoln Zoning Ordinance Art. II, § 260-22. The vacant lot would be approximately ten thousand one hundred sixty-one square feet (10,161 ft[2]), leaving the remaining property with approximately thirteen thousand seven hundred ninety-four square feet (13,794 ft[2]). The new proposed lot would meet all of the Town of Lincoln Subdivision Regulations and Zoning Ordinances. (Applicant's Br. 3.) However, the existing lot, because of its irregularity, would fail to meet the setback requirements of the Zoning Ordinances. See Applicant's Exhibit A; Lincoln Zoning Ordinance Art. II, § 260-22. Although the Applicant's house — which is currently an existing structure on the Property — is grandfathered in as an existing nonconforming *Page 3 
structure, a subdivision of the property would re-open the issue of the Property's insufficient setbacks. (Tr. at 35; Applicant's Br. 3.)
The Planning Board granted approval of the subdivision, conditioned upon receipt of dimensional variances from the Zoning Board of Review.Id. at 4. Mr. Trenteseau then filed an application with the Board, requesting the following: the grant of relief of 17.95 feet for the west-side setback, 24.2 feet for the rear-south setback and 6.4 feet for the front-yard setback. (Applicant's Br. 4; Applicant's Exhibit A.) A duly noticed public hearing was conducted concerning Plaintiff's request on October 2, 2007. (Applicant's Br. 4.)
At the hearing, Applicant presented written and oral testimony from Edward Pimental, who was certified as an expert in the area of land use planning, and the testimony of Donald Morash, Jr., a broker who was certified as an expert in the area of real estate. (Applicant's Br. 4, 6.) Both recommended that the variance be allowed, proffering,inter alia, that the subdivision was a permitted use, that the nonconformities resulted from a taking and not the actions of the Applicant, and that the variance would not negatively impact the value of the surrounding property. Id.
Speaking against Applicant's request were two neighbors, Ann Marie DeConti and Bruce McCabe, who both contended that the area was an historic district, and that the subdivision would negatively impact the surrounding properties and compromise the historic environment. (Tr. at 27-28.) In a Decision recorded December 5, 2007 ("Board's Decision"), the Board voted three (3) to two (2) to approve Applicant's request. However, because Applicant failed to muster four or more votes in favor of the application, his request was automatically denied.[1] *Page 4 
The Board's Decision reviewed the testimony of Edward Pimental, Donald Morash, Ann Marie DeConti, and Bruce McCabe, as well as the recommendation of the Planning Board. The Board noted that the Planning Board determined the dimensional variances sought by the Applicant were to cure existing non-conformities, and that it had recommended approval of the application as the relief requested would not alter the general character of the surrounding area. The Decision recorded the concerns of several Board members that the Applicant was seeking relief solely for financial gain, and that the variance would impact the nature of the historic area, even though the Property was not located in a designated historic zone. The two Board members who voted against the application reasoned that the subdivision was sought for financial gain, and that it would impair the intent of the comprehensive plan to maintain the neighborhood's historic character.
Mr. Trenteseau timely appealed the Board's Decision to this Court on December 17, 2008.
 II Standard of Review
The Superior Court's review of a zoning board decision is governed by § 45-24-69(d), which provides in pertinent part:
 (d) The Court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence of questions of fact. The court may affirm the decision of the board of review or remand the case for further findings, inferences, conclusions or decisions which are:
 (1) In violation of constitutional, statutory, ordinance or planning board regulations provisions;
 (2) In excess of authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or *Page 5 
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
When reviewing the decision of a zoning board of review, this Court "may `not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact.'" Curran v.Church Cmty Housing Corp., 672 A.2d 453, 454 (R.I. 1996) (quoting G.L. 1956 § 45-24-69(d)). The Superior Court is called upon to examine "the entire record to determine whether `substantial' evidence exists to support the board's findings." Mill Realty Associates v. Crowe,841 A.2d 668, 672 (R.I. 2004) (quoting DeStefano v. Zoning Bd. of Review of theCity of Warwick, 122 R.I. 241, 245, 405 A.2d 1167, 1170 (1979). The Court has defined "`[s]ubstantial evidence . . . [to mean] such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means [an] amount more than a scintilla, but less than a preponderance.'" Lischio v. Zoning Bd. of Review of the Town of NorthKingstown, 818 A.2d 685, 690 n. 5 (R.I. 2003) (quoting Caswell v. GeorgeSherman Sand and Gravel Co., Inc., 424 A.2d 646, 647 (R.I. 1981)). Thus, the Court must examine the record to determine whether competent evidence exists to support the Board's decision. See von Bernuth v.Zoning Bd. of Review of Town of New Shoreham, 770 A.2d 396, 401-402
(R.I. 2001). Conclusional or insufficient evidence warrants the reversal of a zoning board's decision. See Hopf v. Bd. of Review of City ofNewport, 102 R.I. 275, 230 A.2d 420 (1967). If the zoning board's decision is affected with legal error, the Superior Court must reverse said decision. Harmel Corp. v. Zoning Bd. of Review, 603 A.2d 303, 305
(R.I. 1992).
 III Analysis
On appeal, Applicant contends that the Board's Decision was clearly erroneous in view of reliable, probative, and substantial evidence; that the Board's Decision was made in clear error *Page 6 
of law, as the Board rendered its Decision based upon the use of the property and not the dimensional relief requested, thereby denying Applicant the opportunity to enjoy a legally permitted beneficial use; that the Board incorrectly considered the applicability of historic district regulations in clear error of law; that the Board's Decision was arbitrary and capricious; and that Applicant is entitled to an award of reasonable attorney's fees and litigation costs pursuant to G.L. 1956 § 42-92-1 et seq.
The Board has filed a memorandum in opposition to the Applicant's appeal. The Board contends that the denial of Applicant's request was supported by substantial evidence and findings. It contends that the Applicant's predecessors in interest were compensated for the taking that caused the irregularity of the Property. It avers that the Applicant subsequently created his own hardship by proposing to subdivide the Property, which would result in the loss of the Property's status as an existing nonconforming lot. See Board's Br. 5-6. The Board proffers that it was persuaded by the testimony of Applicant's two neighbors, and concluded that the character of the area and impact to the neighborhood should preclude the subdivision. It further contends that it had a right to consider the entire project on the property, and concluded properly that the hardship resulted from Applicant's goal to realize greater financial gain. Finally, the Board argues against the Applicant's alleged entitlement to attorney's fees.
Ms. DeConti, one of the neighbors who testified at the public hearing, has joined the suit as an intervenor and has filed a memorandum of law in opposition to Applicant's appeal. In her memorandum, Ms. DeConti reiterates her opinion which was stated at the hearing: that the variance would "change the fabric of the neighborhood by affecting the rural quality of the area and by compromising the historic environment." (Intervenor's Br. 3; Tr. at 28.). Ms. DeConti contends that Mr. Trenteseau failed to meet his burden of proof for a dimensional variance, as his *Page 7 
sole motivation to subdivide the property was for financial gain, she maintains that he created his own hardship by seeking to subdivide the property. (Intervenor's Br. 6-7.)
 A Dimensional Variance
A dimensional variance "provides relief from one or more of the dimensional restrictions that govern a permitted use of a lot of land, such as area, height, or setback restrictions." Sciacca v. Caruso,769 A.2d 578, 582 n. 5 (R.I. 2001); see also G.L. 1956 § 45-24-31(61)(ii) (defining dimensional variance by statute). The Board's authority to grant a dimensional variance is derived from G.L. 1956 § 45-24-41, which delineates the findings that the Board must make in order to grant a variance. The statute states in pertinent part:
 (c) In granting a variance, the zoning board of review requires that evidence to the satisfaction of the following standards is entered into the record of the proceedings:
 (1) That the hardship from which the applicant seeks relief is due to the unique characteristics of the subject land or structure and not to the general characteristics of the surrounding area; and is not due to a physical or economic disability of the applicant, excepting those physical disabilities addressed in § 45-24-30(16);
 (2) That the hardship is not the result of any prior action of the applicant and does not result primarily from the desire of the applicant to realize financial gain;
 (3) That the granting of the requested variance will not alter the general character of the surrounding area or impair the intent or purpose of the zoning ordinance or the comprehensive plan upon which the ordinance is based; and
 (4) That the relief to be granted is the least relief necessary.
 (d) The zoning board of review shall, in addition to the above standards, require that evidence is entered into the record of the proceedings showing that:. . . . (2) in granting a dimensional variance, that the hardship suffered by the owner of the subject property if the dimensional variance is not granted amounts to more than a mere inconvenience." *Page 8 
The requirements under this statute are mirrored in the Lincoln Zoning Ordinance Art. II §§ 260-64 and 260-65. In making its determinations with respect to this standard, the Board is mandated by statute to provide findings of fact to support its conclusions. Section 45-24-61 (requiring that the Board "include in its decision all findings of fact and conditions. . . ."). The Rhode Island Supreme Court has cautioned zoning boards to comply with this statutory requirement, advising boards "to make certain that zoning-board decisions on variance applications (whether they be use or dimensional) address the evidence in the record before the board that either meets or fails to satisfy each of the legal preconditions for granting such relief as set forth in § 45-24-41(c) and (d)." Sciacca, 769 A.2d at 585.
 B Review of the Board's Decision with Respect to LegalError
The Applicant contends that the Board's Decision was affected by legal error because the Board incorrectly considered the applicability of historic district regulations, and because the Board rendered its Decision based upon the use of the property and not upon the dimensional relief requested. Applicant argues, therefore, that the Board's Decision should be reversed. See Harmel Corp., 603 A.2d at 305.
In reviewing the record, this Court has determined that while there was some confusion at the hearing over the issue of whether the Property fell within an historic district, this issue was properly treated in the Board's Decision. The Historical Area Zoning Act permits a city or town to designate historic districts and to regulate activity within those districts. Section 45-24.1. When an area falls within this Act, there are specific factors that the zoning board must consider before granting a variance. Section 45-24.1-4; Bellevue Shopping Ctr. Ass'n v.Chase, *Page 9 574 A.2d 760, 764 (R.I. 1990). Naturally, if Applicant's Property were located in such an area, there would be additional considerations before the Board.
Applicant's house, which currently exists on the Property, is itself an historical home. (Tr. at 9.) However, the Comprehensive Plan notes that the intended use of the Property was as part of an RL-9 zone for high density single-family and two-family dwellings. (Tr. at 12; Lincoln Zoning Ordinance Art. II, § 260-7). When Ms. DeConti testified, she referred to the Great Road (on which the Property is located) as an historic district and a cultural resource recognized by the Rhode Island Department of Environmental Management. (Tr. at 28.) The Applicant's counsel reiterated to the Board that there was, in fact, no historic district protecting this property. (Tr. at 32; Applicant's Br. 24.) The Chairman of the Board made a specific note to this effect. (Tr. at 41-42.) In his appeal to this Court, Applicant contends that the Board inappropriately evaluated the importance of the historic nature of the road in denying his application. (Applicant's Br. 25.) The Board's Decision noted that the Property was not protected as part of an historic district, but found that because of the historic nature of many of the homes, the variance would alter the character of the surrounding area. It is legally correct for the Board to consider the affect of a variance on the character of the surrounding area. See section 45-24-41. Therefore, this Court finds that, although the weight of the evidence does not support a finding that the variance would alter the character of the surrounding area (discussed infra), the Board's Decision was not based upon a legal error in considering the historic character of the area surrounding the Property.
The Applicant further contends that the Board's Decision was based upon legal error because the Board considered the entire project, including the use of the subdivided property, rather than applying the appropriate standard for a dimensional variance. During the hearing, the *Page 10 
Board properly stated the standard that it would apply in considering Mr. Trenteseau's application for a dimensional variance. (Tr. at 3.; G.L. 1956 § 45-24-41). However, Board members Gabriella Halmi and Kristen Rao referenced the subdivision as their greater concern. (Tr. at 39-40.) Ms. Halmi stated,
 "I do not have a problem with the variance, per se, because the house is pre-existing. They would need them [the variances] anyway. It's nonconforming, and they had the taking of the land by the State which changed the property lines and all that. My problem is really with the subdivision of the property, and I know that's the planning board's purview, but I feel that granting the variance would be helping him to subdivide the property which is what triggered them being here, and I have a real problem with that." (Tr. at 39.)
The Applicant contends that consideration of his application with respect to the subdivision essentially imposed a heightened standard of review. (Applicant's Br. 18.) Under § 45-24-41, the Board must find that an applicant has proven a greater hardship (that the land cannot yield any beneficial use) for a use variance than for a dimensional variance (that the hardship amounts to more than a mere inconvenience.[2] The Applicant analogizes his case with the Rhode Island Supreme Court's Decision in Lischio v. Zoning Bd. of Review, 818 A.2d 685 (R.I. 2003). There, the applicants sought to develop a mini self-storage facility, and filed an application for both a use variance (in order to construct a road over part of the property) and a dimensional variance (to accommodate setback requirements). Id. at 688. The petitioners were denied both variances by the zoning board, and the trial court reversed as to the use variance but affirmed as to the dimensional variance.Id. at 689. The applicants in Lischio contended that the *Page 11 
zoning board and the trial court erred in considering the proposed use of the property in connection with the dimensional variance.Id. at 690. The Supreme Court agreed, finding that the use, which was legally permitted, should not have factored into the considerations for the dimensional variance. Id. at 693. The Court stated that
 ". . . when seeking dimensional relief for lawfully permitted uses the review should not focus on the use of the parcel because a legislative determination has been made previously that the use is appropriate and does not adversely affect the general character of the area. A permitted use, under § 45-24-31 (52), is `[a] use by right which is specifically authorized in a particular zoning district.' Thus, in this case, a mini self-storage facility is a permitted use because lot No. 20 is zoned general business; consequently, it will not adversely affect the character of the surrounding area." Lischio, 818 A.2d at 693.
This Court is persuaded that Lischio is indeed an analogous case. In this matter, Applicant similarly seeks a dimensional variance in order to conduct a legally permitted use of the Property. But for the nonconforming setbacks on his existing home, Mr. Trenteseau would be entitled to subdivide his property under the Subdivision regulations. (Tr. at 42.) In fact, the Board acknowledged that if Mr. Trenteseau had opted to knock down his own home and then subdivide his property, he would have more than enough area, and would be able to make this subdivision without relief from the Board at all. (Tr. at 44.) By considering the subdivision as part of the request for a dimensional variance, certain members of the Board recognized the "piggy-backing" effect that occurred in the Board's reasoning, and noted the "injustice" of such reasoning. (Tr. at 44.)
This Court finds that Mr. Trenteseau's subdivision and proposed construction of a new single-family home was a lawfully permitted use, which, by legislative determination, does not affect the general character of the area. Lischio, 818 A.2d at 693. Therefore, because the Board *Page 12 
considered the subdivision as part of its consideration of the dimensional variance application (which was, significantly, necessary only for the existing structure and not the new Lot), this Court concludes that the Board's Decision was affected by an error of law, warranting reversal of that Decision. See section 45-24-69(d).
 C Review of the Board's Decision with Respect to Substantial Evidence
This Court has reviewed the record and finds that in addition to being affected by an error of law, the Board's Decision was "clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record." Section 45-24-69(d). The Superior Court is called upon to examine "the entire record to determine whether `substantial' evidence exists to support the board's findings." Mill Realty Associates,841 A.2d at 672. The Court may reverse a zoning board's decision where it lacks the support of "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion . . ."Lischio, 818 A.2d at 690 n. 5.
In this case, Applicant presented to the Board the persuasive determination and recommendation of the Planning Board. (Tr. at 26.) The Planning Board reviewed Mr. Trenteseau's request, and determined that
 "[t]he proposed dimensional variances are to clear up the preexisting nonconformance of this parcel of land. . . . The planning board recommends approval of this application. The [planning] board finds that the relief requested will not alter the general character of the surrounding area or impair the intent and purpose of the Lincoln Zoning Ordinance or the Lincoln Comprehensive Plan." (Tr. at 26-27.)
Even assuming, arguendo, that it was legally proper for the Board to consider the subdivision in conjunction with the dimensional variance, the Board agreed that the subdivision of the property was within the purview of the Planning Board. (Tr. at 39). The Board *Page 13 
disregarded the recommendations of the Planning Board with respect to how the variance would ultimately affect the Zoning Ordinance and Comprehensive Plan. See id.
The Board further disregarded the highly probative and reliable evidence proffered by Applicant's witnesses. See Section 45-24-69(d). Mr. Pimental, a land use expert, testified that Applicant's house predates the adoption of zoning. (Tr. at 9.). He elaborated on the process of the takings process, and proffered that the nonconformity of the land with regard to setbacks was the direct result of takings under eminent domain, and so the hardship from which Applicant seeks relief is from the unique characteristics of the subject land, and not the result of any prior act by the Applicant. (Tr. at 10.) Mr. Pimental further stated that he had visited the neighborhood and had looked at the tax assessment records. Id. He discovered that the new proposed lot would be one of very few in the neighborhood that actually complied with the zoning requirements. Id. Mr. Pimental noted that the Applicant was seeking to use his property in conformity with the Subdivision Regulations, and so denial of the variance would result in more than a mere inconvenience. (Tr. at 11.) Mr. Pimental concluded that, but for the takings, Mr. Trenteseau would have been able to take the actions for which he requested relief without any need to come before the Board, and his case was "perhaps the most perfect example of the least amount of relief necessary" because his actions did not result in the deviations which prohibited his desired action. (Tr. at 12-13.)
The Applicant also presented the testimony of Donald Morash, an expert in real estate evaluation. Mr. Morash stated that he had examined the area in question, and had taken note of the surrounding houses and traffic. (Tr. at 15.) He stated that the addition of a new house in the vicinity would do nothing but elevate the general area. (Tr. at 16.) He countered the Board's concern that Mr. Trenteseau was acting primarily for financial gain by informing the Board that *Page 14 
Mr. Trenteseau's intent was to build a house for his family on the newly developed lot. (Tr. at 17.)
This Court is mindful of the deference granted to the Board, in which this Court "may `not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact,'"Curran, 672 A.2d at 454, and must uphold the Board's findings where there is supportive evidence that "amount[s] [to] more than a scintilla, but less than a preponderance.'" Lischio, 818 A.2d at 690 n. 5. However, conclusional or insufficient evidence warrants the reversal of a zoning board's decision. See Hopf, 102 R.I. 275, 230 A.2d 420. Here, although the Board considers as weighty evidence the arguments of neighbor and intervenor Ann Marie DeConti regarding the historical character of the area in which the property is located and the alleged financial gain sought by Applicant, this Court finds such evidence insufficient.See id.; see also Toohey v. Kilday, 415 A.2d 732, 737 (R.I. 1980) (holding that the lay judgments of neighboring property owners on such issues as the effect of a proposed use on neighboring property values and traffic conditions "have no probative force," as the lay witnesses lack the requisite expertise). The record indicates a robust debate among the Board members in which the evidence is carefully considered. However, the ultimate conclusion that the character of the surrounding area would be impaired and that the application was brought solely for financial gain, is made without reasonably adequate evidence.Lischio, 818 A.2d at 690.
 D Applicant's Rights to Attorney Fees
The Applicant contends that he should be awarded reasonable attorney's fees and litigation costs pursuant to G.L. 1956 § 42-92-1, etseq. ("Equal Access to Justice Act"). The Board counters that the Plaintiff failed to name the treasurer of the Town a necessary party, in *Page 15 
this case the Finance Director, as required under § 45-15-5, and brings the appeal pursuant to § 45-24-69, which only allows the Superior Court to uphold, reverse or remand the Board's Decision, and does not provide for the recovery of attorney's fees.
This Court finds it unnecessary to determine whether the appropriate procedural action was taken by the Applicant under the statutes. In this case, even assuming, arguendo, that the Applicant could recover without having named the Finance Director in this suit, he would not be entitled to attorney's fees.
Under the Equal Access to Justice Act, a prevailing plaintiff is entitled to reasonable attorney fees when an agency action was without substantial justification. Section 42-92-1, et seq. "Substantial justification means that the initial position of the agency, as well as the agency's position in the proceedings, has a reasonable basis in law and fact." Section 42-92-2 (7). The Rhode Island Supreme Court has held that in applying the substantial justification test, "the Government now must show not merely that its position was marginally reasonable; its position must be clearly reasonable, well founded in law and fact, solid though not necessarily correct." Taft v. Pare, 536 A.2d 888, 893 (R.I. 1988). Although this Court has determined that the Board's Decision was erroneous, this Court holds that the Board could have reasonably believed that it was acting properly under the law and facts. The Board's actions were not so substantially unjustified as to warrant the award of attorney's fees. Therefore, Applicant's request for attorney's fees is denied.
 IV Conclusion
For the foregoing reasons, this Court concludes that the Board's Decision was affected by an error of law, and was clearly erroneous in view of the reliable, probative, and substantial *Page 16 
evidence of the whole record. Section 45-24-69(d). The matter is hereby remanded for findings consistent with this Decision. Although the Board's Decision was in error, this Court finds that its actions are not so egregious as to warrant an award of attorney's fees under Section 42-92-1, et seq.
Counsel shall prepare the appropriate order for entry
[1] Pursuant to G.L. 1956 § 45-24-57, "[t]he concurring vote of four (4) of the five (5) members of the zoning board of review sitting at a hearing are required to decide in favor of an applicant on any matter within the discretion of the board upon which it is required to pass under the ordinance, including variances and special-use permits."
[2] The statute states that the Board must find "in granting a use variance the subject land or structure cannot yield any beneficial use if it is required to conform to the provisions of the zoning ordinance. Nonconforming use of neighboring land or structures in the same district and permitted use of lands or structures in an adjacent district shall not be considered in granting a use variance; and . . . in granting a dimensional variance, that the hardship suffered by the owner of the subject property if the dimensional variance is not granted amounts to more than a mere inconvenience." Section 45-24-41.