[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
Before this Court is an appeal of a zoning board of review decision. Mariposa Holdings, LLC and Domestic Bank (appellants or applicants) sought and received variance relief from the City of Cranston Zoning Board (appellees or Board) and now appeal that decision relative to a specific condition placed on said variance. Jurisdiction is pursuant to G.L. 1956 § 45-24-69.
 FACTS AND TRAVEL
Mariposa Holdings, LLC, a Rhode Island limited liability company, owns a parcel of real estate located at 50 Libera Street in Cranston, Rhode Island (property). The property is further described as Assessor's Plat 12/4, Lots 3139 and 3140 and is situated in a M-1 zoning district, i.e., a restricted industrial zone. The 1.29-acre property contains a 25,033 square foot building previously used for manufacturing. Domestic Bank, a Rhode Island corporation, wishes to use this facility as its corporate administrative office. (March 10, 2004 Hearing Tr. at 5.) Although corporate administration represents a permitted use of the property pursuant to section 30-9 of the Cranston Zoning Ordinance, the appellants nonetheless submitted to the Board an application for a parking variance because the improvements on the property were situated in such a way that compliance with the Cranston City Code (Code) would be impossible. (March 10, 2004 Hearing Tr. at 5.) Specifically, the Code requires four parking spaces for each 1,000 square feet of floor area in connection with property used as office space. Cranston, R.I., Code § 17.64.010(I)(15) (2005). The facility at issue is 25,003 square feet, and, as such, the Code mandates that the appellants provide space for 100 parking spots on the property. There is, however, limited parking space because of the manner in which the building is situated on the property. (March 10, 2004 Hearing Tr. at 21.) Therefore, the appellants sought a dimensional variance from the required number of parking spots.
The Board scheduled a hearing on the variance application for March 10, 2004. On March 2, 2004, the City of Cranston Planning Commission (Commission) reviewed the appellants' variance application,[1] and made the following eight findings of fact:
 "1. The total building area, 25,033 sq. ft., would require 100 parking spaces.
 2. The proposed off-street parking lot provides 52 spaces.
 3. The Comprehensive Plan Future Land Use Map calls for Commercial and Services use for Libera Street. Proposed use is consistent with the Comprehensive Plan.
 4. Approximately ½ of the existing building is within a FEMA 100 year flood plain.
 5. The property abuts Randall Pond.
 6. The existing front yard setback is approximately 5 ft.
 7. The application has been submitted for site plan review, but not approved as of this date.
 8. The proposed parking plan has not been approved by the City's Traffic Engineer."
 March 2, 2004 Decision of the Commission.
Based on these findings, the Commission recommended that the Board approve the proposed variance. This approval, however, would be contingent on the following conditions:
 "1. Site Plan Review approval.
 2. Approval of the parking plan by the city's traffic engineer.
 3. Move back the nine parking spaces along Libera St., and install a minimum 3' wide landscaped strip.
 4. Remove or replacement of the existing chain link fence around parking lot.
 5. The Zoning Board consider placing a limit on the number of employees for the building, because of the limited number of off-street parking spaces."
 March 2, 2004 Decision of the Commission.
On March 10, 2004, the Board held a full hearing at which the appellants presented a number of witnesses in support of their application. Nathanial Baker (Baker), President of Domestic Bank, testified that the move to this new location was, in part, to relieve parking strains at the corporation's existing location. (March 10, 2004 Hearing Tr. at 8.) Baker assured the Board that similar parking issues would not exist at the instant location because they intended to use this facility strictly for administrative purposes — processing mortgage loan applications — and it would, therefore, be void of consumer traffic. (March 10, 2004 Hearing Tr. at 7.) Finally, Baker testified that Domestic Bank anticipated moving approximately 40 employees to this site. (March 10, 2004 Hearing Tr. at 7). However, when pressed on this matter, Baker was unclear as to whether more employees would be transferred in the future. (March 10, 2004 Hearing Tr. at 8-14.)
The appellants also presented the testimony of Nicholas Campiano (Campiano), manager of the on-site parking plans. (March 10, 2004 Hearing Tr. at 15.) Campiano admitted that the current parking plan — which called for 51 on-site parking spots — was the only viable plan given the physical layout of the property. (March 10, 2004 Hearing Tr. at 16.) Additionally, Thomas Sweeney (Sweeney), an expert in real estate appraisal, testified that the surrounding area could properly be characterized as a "mixed commercial/industrial area." (March 10, 2004 Hearing Tr. at 21.) Sweeney further agreed that the appellants' proposed use of the property was consistent with his characterization and with the purposes of the Cranston Zoning Ordinances and Comprehensive Plan. (March 10, 2004 Hearing Tr. at 22.) Finally, Sweeney testified that the limitation of available parking space was due to the unique physical arrangement of the property and not to any fault of the appellants. (March 10, 2004 Hearing Tr. at 21-22.)
Taking into account the aforementioned testimony and the Commission's recommendations, the Board made the following findings of fact:
 "(a) [T]he property is located in an Industrial M-1 District (Restricted industry) and has an approximate area of 56,305 +/- SF; (b) the total building area, 25,033 SF, would require 100 parking spaces; (c) the proposed off street parking lot provides 52 spaces; (d) the Comprehensive Plan Future Land Use Map calls for Commercial and Services use for Libera Street, proposed use is consistent with the Comprehensive Plan; (e) approximately half of the existing building is within a FEMA 100 year flood plain; (f) the property abuts Randall Pond; (g) the existing front yard set back is approximately 5 feet; (h) the application has been submitted for site-plan review; (i) the applicant's intended use of the property is a permitted use in an Industrial M-1 District, but involves a change in use; (j) the intended number of employees, at the proposed site, was not clear from the testimony presented, and in the circumstances, is a cause for concern, given the issue of available off-street parking, which is shown to be 52 spaces, although the total building area of 25,033 SF would require 100 parking spaces; (k) the applicant presented the testimony of an architect in support of the application; (l) the applicant presented testimony of an expert in commercial real estate, in support of the application, who prepared a report, with an analysis of the surrounding area, and the impact of the intended use; (m) no signage relief was being requested; (n) the Planning Commission unanimously voted to recommend approval of the Application; (o) no one testified in opposition to the application." March 10, 2004 Decision of the Board.
In light of these findings, the Board concluded that the applicants' hardship was due to the unique characteristics of the property and not to their physical or economic disability; that the hardship was not merely the result of the applicants' desire for increased financial gain; that the variance would not alter or impair the purpose of the Zoning Ordinances or Comprehensive Plan; and that the property could not yield any beneficial use if the applicants were required to conform to the ordinance. (March 10, 2004 Decision of the Board.) Therefore, the Board granted the applicants' request for a variance, but it also imposed the following conditions:
 "a) No more than 50 employees.
 b) Site Plan Review approval required.
 c) Approval of the parking plan by the city's traffic engineer.
 d) Move back the nine parking spaces along Libera Street and install a minimum 3' wide landscaped strip.
 e) Removal or replacement of the existing chain link fence around the parking lot."
 March 10, 2004 Decision of the Board.
The appellants filed a timely appeal of the Board's decision, as well as notice of their appeal, and the appellees filed a timely answer. Subsequent to filing the appeal, however, the appellants filed a Petition for Reconsideration (Petition), asking the Board to reconsider the condition limiting the number of employees on the grounds that such a condition "presents an undue hardship . . . with regard to the [p]roperty, adversely affects the marketability of the [p]roperty, and is not compatible with the most efficient use of the [p]roperty." (June 23, 2004 Petition for Reconsideration.)
The Board scheduled a hearing on the Petition for September 8, 2004. As with the original application, the Commission reviewed the matter prior to the full hearing. The Commission recommended rejecting the Petition and enforcing the condition because "[a]n excess of 50 employees would require the overflow of vehicles to park on Libera Street, which is used heavily by tractor trailers because of the industrial park." (September 2, 2004 Decision of the Commission.)
At the subsequent public hearing, the appellants argued that limiting the number of employees would preclude them from making the best and most efficient use of the property. (September 8, 2004 Hearing Tr. at 5.) The appellants' counsel testified that Domestic Bank actually intended to initially transfer approximately 50 workers and then "gradually phase in more employees as the operation progresses." (September 8, 2004 Hearing Tr. at 8.) When pressed by the Board to provide a specific number, the witness acknowledged that "150 would be the max." (September 8, 2004 Hearing Tr. at 30.) Moreover, counsel suggested that, contrary to Baker's March 10 testimony, Domestic Bank wanted to use the property for additional business operations, beyond processing loan applications. (September 8, 2004 Hearing Tr. at 10.) Similarly, Baker confessed that his company simply could not get by with 50 employees at the site, noting that "[i]t doesn't' make sense to under utilize the facility to that extent." (September 8, 2004 Hearing Tr. at 36.)
The applicants also raised some concerns regarding the ambiguity of the condition limiting the number of employees. (September 8, 2004 Hearing Tr. at 5.) Specifically, the applicants pointed out that the limitation was vague as to how it applied to part time employees and to shift work. (September 8, 2004 Hearing Tr. at 5-6.) The Board made a motion to continue the matter until November 10, 2004 so that the applicants could gather more detailed information relative to their off-street parking plan and employee shift schedules. (September 8, 2004 Hearing Tr. at 51.) The applicants, however, failed to appear on that date. Consequently, the Board has not issued a decision on the Petition.
 STANDARD OF REVIEW
Superior Court review of a zoning board's decision is governed by G.L. 1956 § 45-24-69(d), which provides:
 "The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are:
 (1) In violation of constitutional, statutory, or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
When reviewing a decision of a zoning board, Superior Court justices cannot substitute their own judgment for that of the zoning board; rather, zoning board decisions supported by substantial evidence in the record must be upheld. Mill Realty Assocs. v. Crowe, 841 A.2d 668, 672
(R.I. 2004) (quoting De Stefano v. Zoning Bd. of Review, 122 R.I. 241, 245,405 A.2d 1167, 1170 (1979) (citations omitted)). "Substantial evidence . . . means such evidence that a reasonable mind might accept as adequate to support a conclusion, and means [an] amount more than a scintilla but less than a preponderance." Lischio v. Zoning Bd. of Review of NorthKingstown, 818 A.2d 685, 690 n. 5 (R.I. 2003) (quoting Caswell v. GeorgeSherman Sand Gravel Co., Inc., 424 A.2d 646, 647 (R.I. 1981)). The Court may reverse a zoning board decision predicated upon an error of law. Kaveny v. Town of Cumberland Zoning Bd. of Review, 875, A.2d 1, 14 (R.I. 2005).
While the Court is authorized to remand for further proceedings decisions made by a zoning board of review, "the remand for . . . should be based upon a genuine defect in the proceedings in the first instance, which defect was not the fault of the parties seeking the remand." RogerWilliams College v. Gallison, 572 A.2d 61, 62-63 (R.I. 1990). When the zoning board "fails to state findings of fact, the Court will not search the record for supporting evidence or decide for itself what is proper in the circumstances." Kaveny v. Town of Cumberland Zoning Bd. of Review,875 A.2d 1, 14 (R.I. 2005) (quoting Bernuth v. Zoning Bd. of Review ofNew Shoreham, 770 A.2d 396, 401 (R.I. 2001) (citations omitted)).
 DISCUSSION
The appellants set forth a number of arguments as to why the condition limiting the number of employees should be stricken.[2] First, they aver that the evidence in the record fails to substantiate the Board's decision to impose this condition, therefore rendering the decision erroneous, arbitrary and capricious in violation of § 45-24-69. Additionally, the appellants contend that the Board has no statutory authority to impose a condition restricting the number of employees permitted to work on the premises. As a result of the Board's decision to restrict the number of employees on the property, the appellants maintain that their rights have been substantially prejudiced. Accordingly, they now ask the Court to strike the condition altogether. The Board requests that the Court uphold the condition or, in the alternative, that it remand the matter so that the parties can resolve the lingering Petition.
The Rhode Island Supreme Court has held that administrative boards have an inherent power to reconsider their own decisions, as "the power to render a decision in the first instance embodies the power to reconsider that decision." In re Denisewich, 643 A.2d 1194, 1197 (R.I. 1994) (finding that a hearing committee is authorized, and, in fact, obligated, to reconvene in the event new testimony becomes available). "It has generally been held that administrative tribunals endowed with quasi-judicial powers embody the inherent power to reconsider their judicial acts." Id.
In the case at bar, the record before the Court indicates that the public hearing on September 8, 2004 was held precisely so the Board could reconsider the imposition of the condition at issue in this appeal. As the transcript denotes, the Board asked the appellants "[w]hat are you asking us to reconsider?" (September 8, 2004 Hearing Tr. at 6.) To which the appellants responded as follows: "We are conceivably asking the Board to reconsider the 50 employee [condition]." (September 8, 2004 Hearing Tr. at 6.) In other words, "[t]hat the limitation on the employees be removed outright." (September 8, 2004 Hearing Tr. at 7.) During the course of this hearing, the Board made it clear to the applicants that it did not have enough information before it to determine the outcome of the Petition. (September 8, 2004 Hearing Tr. at 48.) Consequently, the Board made a motion to continue the hearing so the applicants could gather more detailed information relative to their off-street parking strategy and employee shift plans. (September 8, 2004 Hearing Tr. at 48-51.) The matter was then continued, and it has yet to be resolved.
Rhode Island law affords aggrieved parties the opportunity to "appeal a decision of the zoning board of review to the superior court." Section45-24-69. However, "the rule . . . demands that an applicant exhaust his administrative remedies" prior to seeking relief from this Court. A BHolding Co., Inc. v. Zoning Bd. of Review of Johnston, 101 R.I. 465, 468,224 A.2d 608, 610 (1966) (citing Otto Seidner, Inc. v. Ralston PurinaCo., 67 R.I. 436, 24 A.2d 902 (1942) (citations omitted)). In the instant matter, the appellant has filed a Petition for Reconsideration of the Board's decision, a Petition the Board has heard. As the Board has not yet rendered its decision with respect to said Petition, the matter is not ripe for review.
 CONCLUSION
After review of the entire record, the Court remands this matter to the Board for a final decision with respect to the appellants' Petition for Reconsideration on the issue of the condition limiting the number of employees. This Court will retain jurisdiction of this case. Counsel shall confer and submit to the Court forthwith for entry an agreed-upon form of Order and Judgment consistent with this Decision.
[1] The Code provides that a zoning enforcement officer or agency shall transmit a copy of each variance application to the Commission for its review and recommendation. See Cranston, R.I., Code § 17.92.010(A) (2005).
[2] The appellants also go into some detail arguing as to why they have established their entitlement to a variance in this matter. Because the Board granted the variance, this Court need not address the issue.