DECISION
Cumberland Farms, Inc. (hereinafter "Cumberland Farms/Appellant") appeals the decision of the Town of Westerly Zoning Board of Review (hereinafter "Town/Board"), which granted a special use permit to the Drake Petroleum Company, Inc. (hereinafter "Drake/Applicant") to renovate an existing retail gasoline service station and two-bay repair garage into a retail gasoline station and convenience store. This appeal is properly and timely before this Court pursuant to G.L. 1956 § 45-24-69.
 Facts and Travel
On November 21, 2003, Conrad Decker, as a business consultant of Drake, filed a special use permit application on behalf of Drake pursuant to § 260-34 of the Zoning Ordinances for the Town of Westerly (hereinafter "Ordinances"). Drake is the owner of the property in issue, located at 74 Friendship Street in Westerly, Rhode Island (hereinafter "Property"). The Property, recorded as Assessor's Plat 47, Lot 12, is zoned "neighborhood business," and is comprised of a lot area totaling 8,405 square feet. At its meeting on December 16, 2003, the Westerly Planning Board, pursuantpursuant to § 260-34(B) of the Ordinances, conductedconducted and approved a development plan review on Drake's behalf. The approval included the condition that the height of the proposed lighting at the facility would not exceed the height of existing lighting and would be directed away from adjoining properties. The Planning Board also issued an advisory opinion to the Zoning Board, in which it recommended approval of Drake's special use permit application. See § 260-34(B). As permitted under § 260-34(A)(3) of the Ordinances, Drake's application contained a letter requesting waivers from two items on the application checklist: a soil erosion plan and a traffic statement, which the Zoning Board approved at its January 7, 2004 meeting. (Tr. at 3.)[1]
At a February 4, 2004 hearing of the Zoning Board, Conrad Decker testifiedtestified that the Property in issue continually operated as a retail gas station and repair facility since the 1950's. Therefore, Drake sought a special use permit to alter the accessory use — retail sales — to the existing gasoline facility. DrakeDrake proposed that such renovations were intended to improve the aesthetics of the property by installation of landscape planters, replacement of older lighting fixtures, installation of an enclosed dumpster pad, and the striping of parking spaces. The Applicant maintained that there would not be any changes to the existing underground storage tanks or concrete mats covering them. (Tr. at 3, 10.) In addition to the exterior improvements, the interior of the building would be renovated for retail use. The retail section would be modified for use as a small, low-volume snack market. The renovations would include a small walk-in cooler, four gondolas for display of snack items, a coffee counter, and facilities for the sale of cigarettes and lottery tickets. (Tr. at 18.)
The new use was not designed to be a full convenience store operation and, therefore, would not be considered a "point of destination" retail facility. Rather, it is designed to accommodate the "impulse" purchase of snack items coincident to a customer's purchase of gasoline. (Tr. at 74-75). In fact, it is located across the street from a Cumberland Farms store which would be considered a more traditional convenience store location. As noted, Cumberland Farms opposed the application and is the Appellant herein.
In addition to aesthetic improvements, the application contained additional evidence of Drake'sDrake's consideration of the compatibility of the proposed use with the neighborhood, the environment, and the Town's Comprehensive Plan. The hearing record contains a traffic statement; a biologist's statement indicating that there is no fresh water or coastal wetlands on the property or within 200 feet of the property; a statement of water quantity and quality issued by the Town's Superintendent of Utilities;; and, a soil and erosion control plan. (Tr. at 5.)
At the hearing, the Appellant presented Mr. John Shevlin, the Vice-President of the Transportation Department at Pare Engineering Corporation and a registered professional engineer in the State of Rhode Island, as its traffic expert. In his professional opinion, Mr. Shevlin recommended that the Board deny the special use permit due to a lack of compliance with dimensional requirements, as well as with the Comprehensive Plan and the Zoning Ordinance. (Tr. at 39-40.) Mr. Shevlin also stated that it would be very important to conduct a traffic study at the Property, based on testimony presented regarding circulation, access and egress; however, Mr. Shevlin admitted that he did not conduct a traffic study, and that the facility appears to have "a lot less use than most of the other stations." (Tr. at 81, 84.) The Appellant also presented Linda Martone, a regional manager for Cumberland Farms, who testified for the limited purpose of discussing the flexibility of deliveries made by retail vendors, and the potential for congestion involving delivery trucks and the traffic flow near the facility. (Tr. at 51.) Lastly, an abutter, Jean Luther, testified relative to the congestion at the intersection where the facility and Cumberland Farms are located. In Ms. Luther's lay opinion, she stated that the proposed changes could only worsen the situation at that intersection. (Tr. at 65.)
The Applicant presented Mr. George Giacobbi, a territorial sales manager with the company, who testified that Drake has owned the facility for approximately six or seven years, and the alleged congestion would be no greater than that which existed previously. Mr. Giacobbi opined that any changes permitted under the special use permit would not adversely affect the area. (Tr. at 67-68.)
A traffic study was not conducted by either party; however, Mr. Anthony Giordano, the Zoning Official, stated that the purpose of the Planning Board's development plan review is to lighten the burden on the Zoning Board. In its assessment, the Planning Board did not find a problem with the traffic flow because it "exists and will continue to exist." (Tr. at 88-89.) The Zoning Board voted on the issue of whether it would require a traffic study, and in a four-to-one vote the traffic study was deemed unnecessary. (Tr. at 92.)
The Appellant raises two arguments urging this Court to reverse the Board's Decision. First, the Appellant argues that Decker's application must be rejected because Decker was not authorized by the Secretary of State's Office to transact business within the State of Rhode Island. Secondly, the Appellant maintains that the record as a whole is devoid of substantial evidence to justify the Board's decision to grant Drake a special use permit. The Appellant argues that the testimony presented could not be classified as legally competent evidence necessary to satisfy the Applicant's burden in obtaining a special use permit.
Following the presentation of all evidence and a motion to approve the application, the Board unanimously voted to grant the special use permit. The Decision, granting the permit, stated that "[t]he Board found that [the proposed use] will be compatible with the neighboring uses and will not adversely affect the surrounding neighbors' use and enjoyment of their property; will be environmentally compatible with the orderly growth and development of the town, and will not be environmentally detrimental therewith." The instant, timely appeal followed.
 Standard of Review
The Court's appellate consideration of a zoning board of review's decision is delineated in § 45-24-69(d) and provides:
 "The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions, or decisions which are:
 (1) In violation of constitutional, statutory, or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
It is this Court's function to "examine the entire record to determine whether `substantial' evidence exists to support the board's findings." Mill Realty Assocs. v. Crowe, 841 A.2d 668,672 (R.I. 2004) (quoting DeStefano v. Zoning Bd. of Review,122 R.I. 241, 245, 405 A.2d 1167, 1170 (1979)). The term "substantial evidence" has been defined as, "more than a scintilla but less than a preponderance." Apostolou v. Genovesi, 120 R.I. 501,508, 388 A.2d 821, 824-25 (1978). This standard means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Id. at 508, 825 (citing Richardson v.Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971)). The "reasonableness" of the zoning board's action is assessed in terms of the board's reliance upon the evidence before it. Id.
(citing United States v. Bianchi Co., 373 U.S. 709, 715,83 S. Ct. 1409, 1414 (1963)).
 The Applicant's Corporate Status
The special use permit application submitted to the Westerly Zoning Board of Review listed Conrad R. Decker and Decker Co., Inc., as applicants, and Drake Petroleum Co., Inc as the owner of said Property. The Appellant argues that subsection (a) of the applicable statute prohibits Decker from maintaining any actions in courts of this State, which likewise must apply to quasi-judicial hearings such as those brought before zoning boards of review. The ApplicantApplicant contends that the mere filing of an administrative proceeding by Decker does not constitute "transacting business" and, therefore, cannot be a violation of G.L. 1956 § 7-1.21-418. The ApplicantApplicant further arguesargues that the Board granted a special use permit to Drake, a licensed corporation within the State, not Decker, and the reason for Decker's involvement in these proceedings is the Appellant's naming Decker as a defendant.
Section 7-1.2-1418 of the Rhode Island General Laws provides in part:
 "(a) No foreign corporation transacting business in this state without a certificate of authority is permitted to maintain any action, suit, or proceeding in any court of this state, until the corporation has obtained a certificate of authority. Nor may any action, suit, or proceeding be maintained in any court of this state by any successor or assignee of the corporation on any right, claim, or demand arising out of the transaction of business by the corporation in this state, until a certificate of authority has been obtained by the corporation or by its successor."
The statute, as enacted by the General Assembly, does not contain language barring Decker from filing an application on behalf of Drake. Decker clearly acted as an agent for Drake, real party in interest. In fact, Article VII, § 260-34(A)(1) of the Ordinances provides that "an application for a special use permit may be made by any person, group, agency or corporation with a legalinterest in the land to which it applies by filing in the office of the zoning enforcement officer an application describing the request." (emphasis added.) Accordingly, the property owner, Drake, was the corporation having a legal interest in the land, and therefore was the applicant. There is no legal impediment to the issuance of the permit to Drake, even though its agent actually filed the application. Furthermore, since both Drake and Decker were added by the Appellant as parties to this appeal, §7-1.2-1418(b) permits Decker to defend this action notwithstanding its lack of a certificate of authority to transact business in this State.
For these reasons, the Board did not exceed its statutory authority in considering and ultimately approving this application for a special use permit.
 Review of the Decision of the Westerly Zoning Board of Review Granting a Special Use Permit
Under Article VII, § 260-34(D) of the Ordinances, "the Zoning Board shall be satisfied by legally competent evidence that the proposed uses and/or structure cited in an application for a special use permit:
 (1) Will be compatible with the neighboring uses and will not adversely affect the surrounding neighbors' use and enjoyment of their property;
 (2) Will be environmentally compatible with neighboring properties and the protection of property values;
 (3) Will be compatible with the orderly growth and development of the Town, and will not be environmentally detrimental therewith;
 (4) That all best practices and procedures to minimize the possibility of any adverse effects on neighboring property, the Town, and the environment have been considered and will be employed, including but not limited to considerations of soil erosion, water supply protection, septic disposal, wetland protection, traffic limitation, safety and circulation; and
 (5) That the purposes of this chapter, as set forth in the Comprehensive Plan, shall be served by said special use permit."
In Toohey v. Kilday, 415 A.2d 732 (R.I. 1980), our Supreme Court discussed the applicable standard for granting a special use permit. As a condition precedent, the applicant must establish that the relief sought is "reasonably necessary for the convenience and welfare of the public." Id. at 737 In order to satisfy the prescribed standard, the applicant must only show that "neither the proposed use nor its location on the site
would have a detrimental effect upon public health, safety, welfare and morals." Id. (quoting Hester v. Timothy,108 R.I. 376, 385-86, 275 A.2d 403, 406 (1971)); Nani v. Zoning Bd. ofReview of Smithfield, 104 R.I. 150, 242 A.2d 403 (1958).
Mr. Decker testified on behalf of the Applicant and responded to a number of questions posed by Board members. Although not qualified as an expert himself, he offered substantial testimony that the granting of the special use permit would not adversely affect the neighbors' use and enjoyment of their property. He testified that the gasoline station would remain the same, and that the substitution of a snack market for the two-bay repair garage would not substantially increase the flow of traffic. Since the retail snack market was not designed to be a "point of destination" convenience store, the customer volumevolume would likely remain similar to previous traffic at the location. In addition, the beautification, lighting, striping, and removal of debris from the location constituted substantial evidence to permit the Board to make its findings.
In addition, the Applicant's position was supported by the testimony of Mr. Alfred DiOrio, who is not only a professional land surveyor but also a "land use consultant." Mr. DiOrio prepared a traffic statement based upon his review of certain compilations of traffic statistics which indicated that the peak hourly traffic count for the proposed use would cause only an insignificant increase in traffic over the prior use as a gasoline station/repair facility. Even the Appellant's traffic expert agreed that the Institute of Transportation Engineers'Engineers' study used by Mr. DiOrio was a "good tool" even though not always "a hundred percent accurate for each site." (Tr. at 82). Certainly the Board could give Mr. DiOrio's testimony greater weight than simply "lay testimony" regarding anticipated traffic counts. Also, in Toohey, supra, our Supreme Court stated that a mere increase in traffic does not necessarily adversely affect the public convenience and welfare and, thus, "is not a valid zoning criterion when neither a consequent intensification of traffic congestion nor hazard at the location accompanies it." 415 A.2d2d at 737. Accordingly, the Board had before it reliable, probative, and substantial evidence that there would not be an increase in traffic that would adversely affect the public convenience and welfare.
Further, the Toohey Court held that "a board may consider probative factors within its knowledge in denying the relief sought or may acquire adequate knowledge through observation and inspection on a view." Id. at 737. However, the board must disclose on the record the observations or information upon which it acted. Id. (citing Perron v. Zoning Bd. of Review ofBurrillville, 117 R.I. 571, 576, 369 A.2d 638, 641 (1977)). The Board's special knowledge of the area is reflected in the record. The Chairman of the Board made representations regarding his residence within Westerly and awareness of the area, and a fellow Board Member discussed his extensive familiarity with the streets and the area in issue. (Tr. at 77-79). Further, the Board expressed its reliance on the advisory decision of the Planning Board — issued after the Planning Board conductedconducted its development plan review on December 16, 2003 — which recommended that the Board approveapprove the special use permit application. (Tr. at 86). The Board had before it reliable, probative, and substantial evidence from which to approve the special use permit.
Mr. Shevlin's testimony on behalf of the Appellant does not require this Court to overturn the Board's decision. Although Mr. Shevlin was presented as an expert, he himself testified that he did not conduct a traffic study, but rather only observed the facility location from 6:00 p.m. to 6:15 p.m. on the night of the hearing. (Tr. at 84.) Mr. Shevlin further opined that the facility "doesn't generate as much as a typical gasoline/service station." (Tr. at 83.) This Court is not permitted to substitute its judgment for the weight the Board placed on such testimony. Additionally, the Appellant stated that due to time limitations, Mr. Shevlin did not conduct a traffic study, and the Applicant admitted that it did not believe the $5,000 cost of conducting a study was warranted. (Tr. at 37, 78.) The Board agreed that a more detailed traffic study would not be necessary under the circumstances. (Tr. at 92).
Based upon the evidence presented, neither the Planning Board, in its development plan review, nor the Zoning Board, in its review of the application, requested a traffic study. (Tr. at 88-89.) The Court has stated that a zoning board is not obliged to accept expert testimony if there is evidence of record that controverts the expert's opinion. See Restivo v. Lynch,707 A.2d 663, 671 (R.I. 1998).
Pursuant to § 45-24-69, "this Court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact." Here, in "weighing the evidence on questions of fact," the Board had substantial evidence before it including the recommendation of the Planning Board and the testimony of Applicant's witnesses, as well as its own knowledge of the area, to substantiate the findings pertinent to the granting of the application.
 Conclusion
After review of the hearing record, this Court finds that the Decision issued by the Zoning Board of Review, granting a special use permit, is based upon reliable, probative and substantial evidence. The Board assessed the evidence of the whole record in its consideration of the compatibility of the proposed use with the neighborhood, environment, growth and development of the surrounding area, and the Town's Comprehensive Plan Thus, substantial rights of the Appellant have not been prejudiced by the Board's findings, which were not made in excess of its statutory authority. Accordingly, this Court affirms the Decision of the Zoning Board of Review in granting a special use permit.
[1] In Re: Town of Westerly Zoning Board of Review, Transcript of February 4, 2004 (hereinafter "Tr.").