DECISION
This matter is before the Court on the appeal of Hamilton Migel Jr. and John K. Dunn ("Appellant")[1] from a decision of the Town of Charlestown Zoning Board of Review ("Board"). The Board's decision, filed November 24, 2003, denied Appellant's request for a special use permit to install a septic system on Appellant's lot. Appellant filed a timely appeal to this Court on December 11, 2003. Jurisdiction is pursuant to G.L. 1956 § 45-24-69.
 Facts and Travel
Appellant owns an unimproved 3.1 acre lot designated as Charlestown Assessor's Map 7, Lot 10 (the "property"), located in Charlestown, Rhode Island. Although currently vacant, the property has frontage on Arnolda Round Road and Charlestown taxes the property as a buildable lot. The property is zoned R2A, in which construction *Page 2 
of a single-family dwelling is a permitted use.[2] The entire lot is situated in an area designated by the Federal Emergency Management Agency ("FEMA") as a Flood Zone "A." Additionally, several areas on the property have been designated as wetlands.
Because the property is not serviced by municipal sewers, Appellant has proposed to install an individual sewage disposal system ("ISDS") so as to allow the eventual construction of a single-family home on the property. The Charlestown Zoning Ordinance (the "Ordinance") prohibits installation of an ISDS in a Flood Zone "A" without a special use permit from the Board. Ordinance § 218-87(A)(4). A special use permit is also required because the proposed location of the ISDS is less than one-hundred feet from the boundary of coastal wetlands. Ordinance § 218-87(A)(1). More specifically, wetlands are found on three sides of the proposed location; 63 feet, 56 feet, and 80 feet.
The Board held a hearing on Appellant's application on November 18, 2003. After taking testimony and receiving exhibits, the Board denied the requested relief, with three members voting to deny and two members voting to approve the application. Section 218-24(J)(3) of the Ordinance requires four votes of approval for the issuance of a special use permit.
At the Board's pubic hearing held on November 18, 2003, Donald Jackson testified on behalf of Appellant's application for a special use permit. Mr. Jackson is a surveyor and septic system designer and is licensed by the State of Rhode Island. He is also the individual responsible for the design of Appellant's proposed ISDS. *Page 3 
Mr. Jackson testified that he had designed an ISDS incorporating an advanced treatment system known as Advantax along with a bottomless sand filter. Mr. Jackson stated that this system is "one of the more advanced systems that the state is allowing for nitrate removal" and that the University of Rhode Island had conducted a study and concluded that a septic system utilizing Advantax and a bottomless sand filter performed the best out of all the systems tested. (Tr. at 5, 16.) He also told the Board that the design of the ISDS provides excess capacity as it is "oversized" in relation to the contemplated ultimate use of the land, a three-bedroom single-family home. Mr. Jackson also testified that, in his opinion, the proposed ISDS would provide proper treatment.
According to Mr. Jackson, the entirety of the property is located in a Flood Zone "A" and that the ISDS must therefore also be located within the Flood Zone. Mr. Jackson testified that the Rhode Island Department of Environmental Management ("DEM") approved the design of the ISDS on July 28, 2003. Mr. Jackson further stated that state regulations require the issuance of a variance in order to install an ISDS in a flood zone area and that this variance had previously been granted.
Mr. Jackson told the Board that the property is also subject to the jurisdiction of the Rhode Island Coastal Resources Management Council ("CRMC") because of the presence of wetlands. Mr. Jackson stated that the CRMC mandates a fifty-foot setback from the wetlands and that the proposed ISDS complies with the CRMC's setback requirement. He also testified that all of the construction would take place on dry ground, and that no wetlands would need to be filled. Mr. Jackson also said that the proposed location maximizes the distance between the ISDS and the boundaries to the *Page 4 
wetlands, but it is impossible to meet the Ordinance's one-hundred foot setback due to the physical layout of the property.
Responding to Board questioning about the possible effects of flooding on the ISDS, Mr. Jackson stated that the ISDS will not function during a flood. As such, the proposed ISDS automatically shuts down in the event that it is covered by water during a flood. Additionally, the design incorporates an alarm system to notify the user of any problem with the ISDS. As to the overall effectiveness of the design, Mr. Jackson stated that the water discharged by the ISDS is clean enough that, although he would not actually want to drink it, "[i]f you had two glasses of water sitting on the table, you wouldn't be able to pick one [out] from the other." (Tr. at 88.)
At the conclusion of Mr. Jackson's testimony, several neighbors appeared before the Board to voice their objections to the special use permit. The Board did not recognize any of the neighbors as an expert witness. In general, the neighbors were concerned about the possible environmental impact from installation of the proposed ISDS. Many of the neigbors felt that granting Appellant's application for a special use permit would damage the area's fragile ecosystem. One neighbor also told the Board that several ospreys had nested in an area adjacent to the property and feared that construction would drive the birds out of the area. Another neighbor was concerned that if a leak ever developed in the ISDS and effluent discharged into the nearby ponds "it's going to be the end of that very famous sanctuary for the birds." (Tr. at 32.) Still other neighbors told the Board that they assumed they would be protected from development on the property and that the Advantax system was intended to replace existing cesspools, not to render an unbuildable lot buildable. *Page 5 
After the close of the public hearing, the Board voted to deny Appellant's application in a 3-2 vote. Board member Horstman voted to deny the application, stating that the Advantax system is "not perfect" and that granting the permit would be "inimical to public health and safety and it generally will not improve the character of the surrounding area." Board member Krantz also voted to deny the application because Appellant did not adequately demonstrate that the ISDS would not pose a threat to drinking water supplies and he was concerned about "sewage and waste disposal into the ground and surface water drainage." Board member Rzewuski voted to deny the application for the sole reason that, in his opinion, Appellant had failed to comply with an Ordinance provision requiring the submittal of the amount of square footage devoted to living space in the single-family home that Appellant hopes to construct. See Ordinance § 218-87(C)(11). This timely appeal followed.
 Standard of Review
Rhode Island General Laws 1956 § 45-24-69 provides this Court with the specific authority to review decisions of town zoning boards. Under § 45-24-69(d), this Court has the power to affirm, reverse or remand a zoning board decision. In conducting its review, "[t]he court shall not substitute its judgment for that of the zoning board . . . as to the weight of the evidence on questions of fact." G.L. 1956 § 45-24-69(d). This Court may reverse or modify the zoning board's decision "if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions, or decisions which are:
 (1) In violation of constitutional, statutory, or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law; *Page 6 
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. Id.
Judicial review of administrative action is "essentially an appellate proceeding." Notre Dame Cemetery v. Rhode Island State Labor RelationsBoard, 118 R.I. 336, 339, 373 A.2d 1194, 1196 (1977); see alsoMauricio v. Zoning Board of Review of the City of Pawtucket,590 A.2d 879, 880 (R.I. 1991). When a question of statutory interpretation is presented, an appellate court conducts its review of that issue de novo.Tanner v. Town Council, 880 A.2d 784, 791 (R.I. 2005).
As to this Court's review of a zoning board's factual findings, "in reviewing a decision of a zoning board of review, the trial justice `must examine the whole record to determine whether the findings of the zoning board were supported by substantial evidence.'" Caswell v. GeorgeSherman Sand Gravel Co., 424 A.2d 646, 647 (R.I. 1981) (quoting Tooheyv. Kilday, 415 A.2d 732, 735 (R.I. 1980)) (other quotations omitted) (emphasis added). Substantial evidence is relevant evidence that a reasonable person would accept as adequate to support the board's conclusion and amounts to "more than a scintilla but less than a preponderance." Id. In short, a reviewing court may not substitute its judgment for that of the board's if it "can conscientiously find that the board's decision was supported by substantial evidence in the whole record." Mill Realty Assocs. v. Crowe, 841 A.2d 668, 672 (R.I. 2004) (quoting Apostolou v. Genovesi, 120 R.I. 501, 509, 388 A.2d 821, 825
(1978)).
 Analysis
Appellant argues before this Court that the Board's denial of Appellant's application for a special use permit rested on the findings of two Board members that *Page 7 
installation of an ISDS would pose a threat to nearby drinking water supplies. According to Appellant, these findings are not supported by substantial evidence in the whole record because Appellant introduced uncontroverted expert testimony that the proposed ISDS would not threaten the quality of drinking water. In urging this Court to overturn the Board's decision, Appellant contends that the Board's concerns were not based on evidence introduced at the Board's hearing, but rather on hypothetical flood situations in which the proposed ISDS would be underwater for substantial periods of time. Appellant also argues that the Board's denial of Appellant's application and subsequent refusal to reconsider its position, along with its practice of granting such permits in other factually similar cases, constitutes an abuse of discretion entitling Appellant to an award of attorney's fees.
In response, the Board argues that its denial of Appellant's application was supported by substantial evidence in the record. The Board first contends that Appellant's witness was neither presented as an expert, nor did he adequately describe the operation of the proposed ISDS and specifically, how it treats waste water on the property. The Board also argues that the testimony of various neighbors with personal knowledge of the property and its general locale, combined with the lack of CRMC approval of the project, provided the board with substantial evidence to conclude that Appellant had failed to show that he was entitled to the issuance of a special use permit.
 DEM Authority to Issue Permits
While the parties have not specifically addressed this particular issue, this Court finds that is it clear from the record that the Board hearing was not the first time that Appellant's proposal to construct an ISDS had been considered by a Rhode Island state *Page 8 
agency. Appellant had previously submitted an application to DEM and received DEM's approval of both the proposed ISDS as well as the siting and dimensions of an eventual single-family home on the property. Consequently, this Court is troubled by the Board's seeming complete disregard of the expert opinions and determinations implicit in DEM's approval of the proposed ISDS.
The General Assembly has vested the Director of the DEM with the authority to approve or deny applications for construction in areas defined as wetlands. Pursuant to G.L. 1956 § 2-1-21(a),
 (1) [n]o person . . . may excavate; drain; fill; place trash, garbage, sewage, highway runoff, drainage ditch effluents, earth, rock, borrow, gravel, sand, clay, peat, or other materials or effluents upon; divert water flows into or out of; dike; dam; divert; change; add to or take from or otherwise alter the character of any fresh water wetland as defined in § 2-1-20
without first obtaining the approval of the director of the department of environmental management.
 (2) Approval will be denied if in the opinion of the director granting of approval would not be in the best public interest. Approval shall not be granted if the city council or town council of the municipality within whose borders the project lies disapproves within the forty-five (45) days provided for objections set forth in § 2-1-22.
G.L. 1956 § 2-1-20 states that the phrase, "fresh water wetlands," "includes but is not limited to . . . areas subject to flooding or storm flowage." This Court finds that the entirety of Appellant's property is located in a Flood Zone "A" and is therefore "subject to flooding" within the meaning of G.L. 1956 § 2-1-20. As such, the property is properly considered a "fresh water wetland" for purposes of G.L. 1956 § 2-1-21(a), and Appellant is required to receive DEM approval of his proposed ISDS.[3] *Page 9 
As already noted, G.L. 1956 § 2-1-21(a)(2) provides that a city or town council may raise an objection to the proposed construction within the forty-five day objection period. After the statutory time for objections passes, the Board lacks the authority to arbitrarily override and effectively revoke permits and/or approvals issued by the DEM.
After examining the entire record, this Court finds that Appellant applied for DEM approval of the proposed ISDS on January 3, 2003.See Appellant's Memorandum of Law, Ex. 6. The application also states that Appellant sought a variance from DEM regulations. Although not addressed by the parties, it appears that Appellant requires a variance from the DEM Rules and Regulations Establishing Minimum Standards Relating to Location, Design, Construction, and Maintenance of Individual Sewage Disposal Systems ("DEM Regulations") SD 19.00, Critical Resource Areas. DEM Regulation SD 19.00(c)(1) establishes that certain locations are defined as critical resource areas, including one designated as the South Shore Coastal Ponds of Charlestown, South Kingstown, and Westerly. This critical resource area is depicted on a map found in DEM Regulations, Figure 2, Coastal Pond Critical Resource Area. After examining the pertinent regulations, this Court finds that the property is located in a critical resource area as defined by DEM Regulation 19.00.
DEM Regulation SD 19.02.4 provides that an ISDS located within a critical resource area must comply with the minimum setbacks found in Table 19.1 of the regulations. Table 19.1 requires a minimum 150 foot setback from "Coastal Pond and Narrow River shoreline features and tributaries including storm and subsurface drains directly discharging thereto." Testimony at the Board hearing established that wetlands *Page 10 
are found at certain distances from three sides of the proposed location, specifically 63 feet, 56 feet, and 80 feet. As such, it appears to this Court that Appellant's request for a variance from DEM Regulations must have been from the applicable standards contained with Table 19.1.
When applying for a DEM variance, an applicant must submit information to the DEM showing how the proposed ISDS will affect
 (1) Public health;
 (2) Any drinking water supply or tributary thereto, including, but not limited to, the cumulative impacts of the system to the surrounding area as described in SD 20.01(g);
 (3) Any body of water including, but not limited to, impacts on groundwater and/or surface water quality and to the ability of the waterbody to support and/or maintain plant and wildlife as well as other designated water uses;
 (4) Public use and enjoyment of any recreational resource; and
 (5) Surrounding persons or property as a potential cause of any public or private nuisance. DEM Regulation SD 20.00(c).
This information is first considered by the ISDS Program's Staff Engineers, who must determine whether granting a variance "would be contrary to the public health, the public interest or the environment." DEM Regulations SD 20.01(a). The DEM staff engineers are then required to submit a written recommendation to the director for the director's final determination of the matter. DEM Regulations SD 20.01(c). The director is required to grant the request for a variance upon a determination that such variance "will not be contrary to the public health, the public interest, or environmental quality." In the instant case, the director granted Appellant's request for a variance, and the prerequisite factual findings are implicit in that approval.
At the Board's hearing, Mr. Jackson testified that the DEM approved the proposed design on July 28, 2003, and Appellant's application for a special use permit *Page 11 
indicates that the ISDS had been improved. The application also included design documents showing details of the approved design. Based on Mr. Jackson's testimony as well as the documentary evidence contained within the entire record, this Court finds that the Board had actual knowledge of the DEM's prior approval of the proposed ISDS.
Given the arduous, in depth, and often expensive vetting process previously described, this Court finds that an applicant should ordinarily be entitled to rely on permits and approvals granted by the DEM. Because it employs the services of highly qualified environmental engineers and biologists to evaluate proposals, the DEM is uniquely positioned to approve or deny proposed ISDS systems and to assess the viability of applications for permits to alter fresh water wetlands. This Court finds that DEM approval of a proposed ISDS should be given weight and carefully considered by a zoning board of review and should not simply be dismissed or ignored.
The DEM's approval is even more significant in the instant case, in which it granted Appellant's request for a variance. Such approval indicates that the DEM was satisfied that construction would not be contrary to public health, the public interest, or environmental quality. An examination of the Board's decision shows that two of the members voting to deny Appellant's application shared these exact concerns. Neither of the Board members provided any reasons for why their environmental reservations were not alleviated by the DEM's thorough and expert review of the proposed ISDS. On the contrary, it appears that the disapproving Board members completely disregarded the DEM's approval of the ISDS system. This Court therefore finds that the Board lacks the statutory authority to so arbitrarily and capriciously predicate denial of a requested special use permit on its lay determinations regarding a DEM-approved ISDS. *Page 12 
This Court notes that the requirements for receiving a DEM variance are substantially similar to several of those found in the Ordinance's requirements for a special use permit. Ordinance § 218-25. Specifically, this Court refers to the requirements that the "public convenience and welfare will be substantially served"[4] and that approval "will not result in adverse impacts or create conditions that will be inimical to the public health, safety, morals and general welfare of the community," "will not pose a threat to drinking water supplies," and "[t]hat the sewage and waste disposal into the ground and the surface water drainage from the proposed use will be adequately handled on site." Ordinance § 218-25(A)(1), (2), (4), (6). This Court finds that the DEM approval of the proposed ISDS constitutes substantial evidence that Appellant has met all of these standards. See also Mill Realty Assocs. v. Crowe,841 A.2d 668, 681 (R.I. 2004) (DEM approval of ISDS indicates that the proposed ISDS would not create a public safety concern) (Flanders, J., dissenting).
After a careful review of the entire record, this Court is unable to find even a scintilla of evidence that the proposed ISDS would pose a threat to public health, drinking water supplies, or that sewage disposal will not be adequately handled on site. Because there was no contradictory evidence before the Board, this Court finds that the Board's decision was affected by error of law and constituted an abuse of discretion as it impermissibly ignored the substantial evidence that had been adduced before it. The Board's decision must be reversed. Given this Court's resolution of the issue, it is unnecessary to address the other substantive arguments of the parties. *Page 13 
 Reasonable Litigation Expenses
Appellant has asked this Court to find that the Board's abuse of discretion in this case entitles him to an award of attorney's fees. Appellant argues that the Board has granted special use permits for the installation of an ISDS in other cases where the property in question was smaller and the proximity to wetlands, including drinking wells, was much greater than in the instant case. In response, the Board argues that there is no precedent for this Court to engage in such a case-by-case comparison and that in any event, the cases referred to by Appellant are not factually analogous to the one currently before the Court.
Although not specifically referred to by either party, any award of attorney's fees is governed by G.L. 1956 § 42-92-1 et seq., the Equal Access to Justice Act (the "Act"). The Act provides that
 (a) Whenever the agency conducts an adjudicatory proceeding subject to this chapter, the adjudicative officer shall award to a prevailing party reasonable litigation expenses incurred by the party in connection with that proceeding. The adjudicative officer will not award fees or expenses if he or she finds that the agency was substantially justified in actions leading to the proceedings and in the proceeding itself. The adjudicative officer may, at his or her discretion, deny fees or expenses if special circumstances make an award unjust. . .
 (b) If a court reviews the underlying decision of the adversary adjudication, an award for fees and other expenses shall be made by that court in accordance with the provisions of this chapter. G.L. 1956 § 42-92-3.
The Act also states that the financial cost of litigation imposed on an individual "should be, in all fairness, subject to state and/or municipal reimbursement of reasonable *Page 14 
litigation expenses when the individual or small business prevails in contesting an agency action, which was without substantial justification." G.L. 1956 § 42-92-1.[5]
Under the act, "substantial justification" means that "the initial position of the agency, as well as the agency's position in the proceedings, has a reasonable basis in law and fact." G.L. 1956 §42-92-2(7). The Supreme Court has explained that an agency is required to "show not merely that its position was marginally reasonable; its position must be clearly reasonable, well founded in law and fact, solid though not necessarily correct." Taft v. Pare, 536 A.2d 888, 893 (R.I. 1988) (internal quotations omitted) (quoting United States v. 1,378.65Acres of Land, 794 F.2d 1313, 1318 (8th Cir. 1986)).
After reviewing the entire record of this case, this Court can only conclude that the Board did not have substantial justification for denying Appellant's application. Appellant's expert witness testified as to the operation and efficacy of the proposed ISDS, and he told the Board that the ISDS would not present any environmental risks to the nearby wetlands.[6] Additionally, the Board had before it the DEM's prior approval of the ISDS, which as already discussed, is uniquely within the ambit of the DEM's expertise and therefore entitled to weight. None of the opposing witnesses were experts, nor did any of them testify as to actual ill effects of prior construction in the area.See Restivo v. Lynch, 707 A.2d 663, 671 (R.I. 1998) (internal citation omitted) (holding that *Page 15 
the board may reject expert testimony "particularly when there is persuasive lay testimony on the actual observed effects of prior construction"). As such, this Court finds that the Board was not substantially justified in ignoring the competent evidence before it contained in the testimony of Appellant's expert witness and implicit in the DEM's prior approval of the ISDS.
This Court would like to emphasize that it is mindful of the role of judicial review permitted by G.L. 1956 § 45-24-69 and does not make this award of attorney's fees lightly. This is not a case in which the Board heard competent testimony from each side, considered the merits of the case, and then misapplied the law or mistakenly believed that certain testimony constituted substantial evidence. This is a case in which the Board had before it substantial evidence in the form of DEM's approval of the ISDS, and rather than question its importance or validity, chose to ignore it completely. The record reveals that the Board members did not even discuss the DEM's findings or provide any reasoning as to why the DEM's determination of the matter did not resolve their environmental concerns.
Moreover, this Court would like to point out that the issues raised by this appeal are in no way unique and have in fact been considered by the Superior Court in several past cases. In Leete v. Town of Foster ZoningBd. of Review, PC/1993-2816, 1995 R.I. Super LEXIS 80, the Superior Court found that DEM approval of an ISDS combined with its distance from drinking wells and water courses "unequivocally indicate that the proposed dwelling and ISDS would not be inimical to the health and welfare of surrounding landowners or the people of Foster."Id. at *14. More recently, in Dulude v. Town of Coventy Zoning Bd. ofReview, KC/2004-0742, 2005 R.I. Super. LEXIS 41, the *Page 16 
Court stated that a zoning board of review does not have the statutory authority to deny a variance of a DEM-approved ISDS unless it connects its environmental concerns with other legal standards contained within a zoning ordinance. Finally, in Kulak v. Zoning Bd. of Review of the Townof Charlestown, WC/2005-0440, 2006 R.I. Super. LEXIS 116, the Court reversed the board's denial of a special use permit, finding that there was no evidence supporting the Board's opinion that a DEM-approved ISDS would contaminate the water supply.
Given all of the foregoing, it is apparent that the Board did not have substantial justification in law or fact for denying Appellant's application. Additionally, an award of attorney's fees can not be a complete surprise to the Board given that the Superior Court has consistently held that a zoning board of review is not at liberty to disregard DEM approval of an ISDS. Accordingly, this Court finds that there are no "special circumstances" rendering an award of attorney's fees unjust within the meaning of G.L. 1956 § 45-92-3(a).
While Appellant has demonstrated that he is entitled to an award of attorney's fees under G.L. 1956 § 45-92-3, Appellant has not yet quantified his litigation expenses or established that he is a "party" pursuant to G.L. 1956 § 45-92-2(5) (stating that a "party" includes "any individual whose net worth is less the five hundred thousand dollars ($500,000) at the time the adversary adjudication was initiated). In the event that Appellant intends to pursue a request for reasonable litigation expenses, Appellant is hereby obligated to file, within ten (10) days of entry of judgment in this matter, the requisite affidavit to establish his eligibility as a "party" under G.L. 1956 § 45-92-2(5) as well as attorney's fees affidavits stating the amount requested and properly documenting *Page 17 
that amount's reasonableness. The Board must file any response to Appellant's fee and expense request within ten (10) days of the filing of such request. All parties must engage in a good faith effort to reach agreement on any remaining fee and expense issues before requesting any further hearing by this Court.
 Conclusion
This Court finds that the Board's decision was not supported by substantial evidence and was in excess of statutory authority as it arbitrarily and capriciously disregarded the DEM's approval of the proposed ISDS. In addition, this Court finds that the Board's decision was clearly erroneous in light of the reliable, probative and substantial evidence contained in the entire record showing that the proposed ISDS would not result in adverse impacts or create conditions inimical to the public health and safety, pose a threat to drinking water supplies, and that the ISDS would adequately handle sewage and waste disposal on the property. Substantial rights of Appellant have been prejudiced. This Court also finds that the Board did not have substantial justification for denying Appellant's application, and that Appellant may therefore be entitled to an award of reasonable litigation expenses under G.L. 1956 § 45-92-1, the Equal Access to Justice Act, subject to further hearing.
Accordingly, the decision of the Board denying Appellant's application for a special use permit to install an ISDS is reversed. This matter is hereby remanded to the Board to grant the requested special use permit, subject to the CRMC's final approval of the project as well as the satisfaction of any additional conditions that the CRMC may impose. Counsel shall submit an appropriate order for entry in accordance with this Decision.
[1] This Court refers to a singular Appellant. Although both Mr. Migel, Jr. and Mr. Dunn were listed on the original application for a special use permit, Mr. Dunn has since become the sole owner of the property at issue here.
[2] The Charlestown Zoning Ordinance provides that the R2A district "is intended primarily for areas of low density residential development." Ordinance § 218-6(W).
[3] DEM approval is also required under G.L. 1956 § 23-27.3-113.6.1, which states in pertinent part that no individual "shall install, construct, alter, or repair . . . any individual sewage disposal system . . . until he or she has obtained the written approval of the director of the department of environmental management of the plans and specifications for the work."
[4] The Supreme Court has held that to satisfy the standard of showing that a proposed use is "reasonably necessary for the convenience and welfare of the public," an applicant "need only show that `neither the proposed use nor its location on the site would have a detrimental effect upon public health, safety, welfare, and morals.'" Toohey v.Kilday, 415 A.2d 732, 735-36 (R.I. 1980) (quoting Hester v.Timothy, 108 R.I. 376, 385-86, 275 A.2d 403, 406 (1971)) (emphasis in original omitted).
[5] This Court notes that the Board does not raise the issues of whether it is an "agency" or whether its denial of Appellant's application constitutes an "adjudicatory proceeding" within the meaning of the Act. Because the Board has failed to raise the argument, it is therefore waived. Nonetheless, this Court can see no reasonable basis for any claim that the Board is not an agency or that the Board's denial was not an adjudicatory proceeding within the meaning of the Act.
[6] The Board's argument that Mr. Jackson was never formally accepted as an expert witness is unavailaing. A review of the transcript shows that the Board asked Mr. Jackson — who was introduced to the Board as a licensed surveyor — a number of questions involving scientific, technical, or specialized knowledge. At one point, a Board member even addressed Mr. Jackson directly, stating "you're the expert," indicating that the Board accepted Mr. Jackson's expertise. This Court finds that Mr. Jackson was a "witness qualified as an expert by knowledge, skill, experience, training, or education." See R.I. Rules Evid. 702.